FARMERS' LOAN & TRUST CO. v. CAPE FEAR & Y. VAL. R. CO. et al.
(NORTH STATE IMP. CO. et al., Interveners).

(Circuit Court, E. D. North Carolina. July 25, 1894.)

1. RAILROAD COMPANIES—RECEIVERS—QUALIFICATIONS.
    Where one possesses integrity of character, business experience, a capacity for the examination into and comprehension of accounts, and has had large financial experience, and has been concerned in the construction and management of railroads, and knows railroad accounts, he is not disqualified to act as a receiver merely because he is not a railroad expert, acquainted with all the details of the mechanical work of a railroad plant.

2. SAME.
    The receiver of a railroad company should not be removed on the ground of alleged unfitness, in removing the treasurer of the company and increasing the expenses of that office, of frequent visits in person on the railroad, and extravagant expenditures, where nothing is shown as to

ability of the person discharged, and where the receiver's answer shows that the expenses of the treasurer's office have not been increased beyond what the pecuniary situation will warrant, where the allegation as to visits were positively denied by the receiver, and where no extravagant expenditure has been shown.

8. SAME.

A person is not disqualified to act as receiver of a North Carolina corporation, owing its conception to the citizens of that state, merely because he is not a citizen of North Carolina.

In the matter of the appointment of a receiver for the Cape Fear & Yadkin Valley Railroad Company, an order was made appointing a receiver, and giving leave to any party interested to intervene, and move to rescind or modify the order, within 60 days from the date thereof. The North State Improvement Company and the People's National Bank of Lynchburgh, Va., intervene and object to the order. Order confirmed.

Watson & Buxton, Charles Price, and F. H. Busbee, for the motion.

Cowan & Cross, H. B. Turner, and I. H. Hudson, for respondent.

SIMONTON, Circuit Judge. One question made in this matter awaits determination. On the 31st March, last, upon this bill filed by trustees of the first mortgage, praying foreclosure, John Gill, Esq., was named as receiver. The order reserved leave to any party interested therein to intervene, and move to rescind or modify the same, within 60 days from the date thereof. The practical effect of this reservation was to make the appointment of the receiver temporary in its nature, until the 60 days had expired, or objection thereto had been heard and considered. Upon the expiration of that period or the hearing of such objection, unless the same proved sufficient, the appointment would become permanent. The interveners have taken advantage of the reservation in the order, and have made a full statement of their objections thereto, which have been patiently heard and have been carefully considered.

At the hearing, the insolvency of the Cape Fear & Yadkin Valley Railroad Company, and the imperative necessity for a receiver, have been frankly admitted. The objections presented are to the person named as receiver. When the application was made in the first instance by the complainants, Mr. Gill was appointed receiver, not on their demand, nor because he was their nominee simply. The necessity for a receivership being apparent, he was selected, because he was preferred by the representatives of the first mortgage bondholders, and because the second mortgage bondholders had shown their confidence in him, he being the president and manager of the Mercantile Trust Company of Baltimore, their trustee. His high character for integrity and business capacity, known to the court, recommended and secured the appointment. At the hearing, certain general objections were urged against continuing him in his position, and certain special objections were urged, growing out of his management as receiver. It is said that he is not a railroad man, his employment being that of a banker and financier. If by this is meant that he is not a railroad expert, acquainted with all the details of

the mechanical work of a railroad plant, this objection, no doubt, is founded on fact.   But, to the masterful management of a railroad company, this expert knowledge alone is not sufficient.   One must combine with this, great business and administrative ability, a knowledge of finance, intimate acquaintance with the laws of trade, and a diplomatic capacity in negotiations with competing, and contracts with connecting, lines.   But this kind of railroad man is very difficult to obtain, and costly when obtained.   Besides this, the court, in selecting its receiver of a railroad, does not seek a person to take charge of and administer a road, to the end, after long experiment, of working it out of difficulties, and restoring it to a successful career; certainly not, at least, when such receiver has been appointed in a suit of mortgage creditors, seeking the establishment and realization of their contract rights.   All that the court can do, in such a case, is to take charge of the property under an equitable execution, ascertain and fix the legal and equitable rights of all parties interested therein according to their lawful priorities, and, when these are ascertained and fixed, to sell the property, and divide the proceeds among those entitled thereto.   During this process of ascertainment and adjustment, it places the property in the hands of a receiver, whose duty it is to preserve it, prevent deterioration, and so manage it that the rights of its real owners shall be prejudiced as little as possible.   The person selected for this duty must possess integrity of character, business experience, a knowledge of affairs, a capacity for the examination into and comprehension of accounts, must not be partisan, and must have no pecuniary interest in any one of the classes of creditors whose claims come before the court.   Mr. Gill fills these requisites. He is of unblemished reputation.   He has had large financial experience, and has credit for great financial ability.   He has been concerned in the construction and management of railroads, and knows railroad accounts.   When he was appointed, the Mercantile Trust Company, of which he is the president, was trustee of the second mortgage.   This place it has resigned, and due provision has been made for the protection of the trust.   He was the owner of some first mortgage bonds.   These he has parted with.   At this hearing, in which his merits are being investigated, he stands an indifferent third person.   It is true, he was chairman of a committee of first mortgage bondholders, which promoted this suit.   But as it is admitted on all sides that a receivership was inevitable, and necessary for the protection of all the interests involved in this business, surely the promotion of a suit accomplishing this necessity cannot be imputed as a fault.   It is said, however, that during the period of his acting as receiver he has shown his unfitness by removing the treasurer of the company and increasing the expenses of that office, by removing the agent at Mt. Airy, by infrequent and hasty visits in person on the road, and by extravagant expenditure.   The expressed ground of complaint against these removals is that the gentlemen removed were relatives of large stockholders.   Nothing in the affidavits bearing on this point, nor in the argument, is said of the superior ability of these gentlemen for the places they filled.   Indeed, nothing at all is said of their ability.   The treasurer should have the absolute con-

fidence of the receiver, who is responsible for him. The answer of the receiver to these complaints is satisfactory. The expenses of the treasurer's office have been increased from $1,800 to $2,600. From all that has been disclosed in this case, so far, the financial department of this company, and a clear and distinct exhibition of its pecuniary situation, will warrant an expenditure as moderate as this. Necessarily, the allegations of the objectors as to the visits of the receiver are on information and belief. They are met and denied positively and directly by the receiver, who speaks of his own knowledge. No extravagant expenditure has been shown.

Another class of objections has been eloquently and earnestly pressed, and it is this: The Cape Fear & Yadkin Valley Railroad is a corporation of the state of North Carolina, owing its conception and successful construction to the patriotic effort of her own people. Some of them have staked their private fortunes on this adventure. The promotion of their interests and the management of their property should be in the hands of a citizen of North Carolina, who would enjoy the confidence of his own people, and would labor singly for their welfare. But in completing their purpose the promoters of this enterprise were forced to go into a money market, and ask the aid of other capital. In order to secure this, they invested the lenders with certain paramount rights, which every court, which the debtors themselves, are bound to respect. Desirable as it is that every effort should be made to relieve the promoters of this road, its original stockholders, and its unsecured creditors from any loss, this could be secured only by a long administration of the affairs of the corporation, by denying to creditors holding contract liens their clear rights, and by postponing a final settlement to a distant day, speculating upon an uncertain future at the expense of the holders of prior liens. Courts are instituted for the investigation and adjustment of rights. Sentimental considerations, however much they may disturb the judgment of a court, should never control it. No citizen of North Carolina was named or suggested at the hearing by any one whatever. It is a matter of regret that Mr. Gill is not a North Carolinian. Surely, however, all other things being equal, it cannot be said, in this court, that this single fact amounts to a disqualification. The appointment of John Gill, heretofore made, as receiver in this case, is hereby confirmed.