BURROUGHS et al. v. TOXAWAY CO. et al.

(Circuit Court, W. D. North Carolina. August 16, 1910.)

1. RECEIVERS (§ 154*)—ALLOWANCES—COUNSEL FEES.

The fees of counsel employed to oppose a motion to vacate an order appointing a receiver are not a proper charge against the estate; the matter being one for litigation by the parties, and not by the receiver.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 282; Dec. Dig. § 154.*]

2. CORPORATIONS (§ 557*)—RECEIVERS—APPLICATION FOR APPOINTMENT WITHOUT NOTICE—REQUISITES OF APPLICATION.

Where a court is asked to appoint a receiver for the property of a corporation without notice, and especially where it is asked to depart from the usual practice and appoint a complainant in the bill, it is the duty of the complainant to make a full, frank, and complete statement to the court of all facts which might affect its action.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2230; Dec. Dig. § 557.*]

3. RECEIVERS (§ 42*)—DUTIES—EFFECT OF TERMS OF ORDER OF APPOINTMENT.

Where an order appointing a receiver, without notice, although permanent in form, reserves leave for any person interested on notice to move

_____

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

182 F.—9

for his discharge, the effect is to make the appointment temporary in its nature and to require the receiver to act accordingly.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 68; Dec. Dig. § 42.*]

4. CORPORATIONS (§ 558*) — RECEIVERS — NATURE OF APPOINTMENT — UNWARRANTED EXERCISE OF AUTHORITY.

Complainant was substituted for the original trustee in a deed of trust executed by a corporation to secure bonds by action of the holder of a majority in amount of the bonds, under a power contained in the deed, and at once presented a bill and application for his own appointment as receiver for the corporation to a federal judge. None of the officers or stockholders had notice of the application, except the president, who at complainant's request signed a letter consenting to the appointment. The judge signed the order presented, after adding a provision giving any person interested the right to move for its vacation on five days' notice. The annual meeting of the stockholders of the corporation was to be held on the day the application was made, but such fact was not disclosed to the judge by the bill or otherwise. Three days after the order was signed, stockholders and creditors served notice of a motion for its vacation, and, a minority bondholder having bought the bonds of the majority holder, the order was vacated and complainant was removed as trustee. *Held*, that the order as signed made the receivership temporary in character, and it was complainant's duty to take no further action as receiver than was absolutely necessary to protect the interests of the corporation, until it was known whether the receivership would be continued; that, having been allowed $500 for his services as trustee, he was entitled to no compensation as receiver, nor to the allowance of counsel fees he had contracted to pay for instituting suits on behalf of the corporation, which action on his part was neither necessary nor warranted under the circumstances.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2237–2240; Dec. Dig. § 558.*]

In Equity. Suit by A. H. Burroughs and R. B. Arrington against the Toxaway Company and George A. Shuford. On exceptions to report of special master. Exceptions sustained in part.

Moore & Rollins and R. G. Lucas, for complainants.

Merrimon & Merrimon, for defendants.

CONNOR, District Judge. This cause came on for hearing upon the exceptions filed by the defendant Toxaway Company, E. H. Jennings, and others to the report of Haywood Parker, Esq., special master. The said exceptions were argued by counsel representing the respective parties, upon the motion for allowance to the receiver, A. H. Burroughs, Esq., for his services and for counsel fees. I find, from an examination of the original bill and exhibits filed therewith, the affidavits read upon the hearing, and the testimony taken before the master, the following facts:

The defendant Toxaway Company, a North Carolina corporation, having its principal office at Brevard, N. C., by deed of trust dated the 1st day of May, 1902, conveyed its real estate, consisting of large bodies of land, hotels, etc., lying in the counties of Transylvania and Jackson, to the Colonial Trust Company, of Pittsburg, Pa., as trustee, to secure an issue of bonds aggregating $200,000, upon the terms and conditions therein set forth.

Of the authorized issue, bonds aggregating $172,000 were outstanding at the time of the filing of the bill herein, and of this amount plaintiff R. B. Arrington was the holder of $132,000. A copy of said deed of trust is attached to the bill and marked "Exhibit A."

The said Toxaway Company, on the 1st day of July, 1903, executed a second deed of trust to secure a bond issue of $100,000, the whole amount of which was outstanding at the filing of the bill herein, and of these bonds the plaintiff R. B. Arrington was the owner of $80,000. A copy of said deed is attached marked "Exhibit B."

By article 18 of said deeds of trust it is provided that the said trustee may be removed by an instrument in writing under the hands of two-thirds in amount of the holders of the then outstanding bonds, and a new trustee may be appointed by the holders of two-thirds in amount of the then outstanding bonds by an instrument in writing signed by them.

Some four months prior to the 28th day of April, 1910, the plaintiff R. B. Arrington purchased an amount of said bonds secured in said deeds of trust, aggregating more than two-thirds of the total amount outstanding at that time, paying full value therefor, including accrued interest thereon. The remainder of said bonds, being the minority thereof, was in the hands of E. H. Jennings, of Pittsburgh, Pa. Pursuant to the provisions of article 18 of said deeds of trust, said R. B. Arrington on April 28, 1910, executed a paper writing removing the said trustee named in said deeds of trust, and appointed in lieu thereof the plaintiff A. H. Burroughs trustee. A copy of said paper is attached to the bill.

On said 28th day of April, 1910, the said R. B. Arrington, as he was authorized by the provisions of the said deeds in trust to do, addressed a letter to the said A. H. Burroughs, trustee, notifying him that the said Toxaway Company was in default in the payment of the interest on said bonds, and in other respects set forth therein, and that, pursuant to the power vested in him, he declared the principal of all the bonds secured by said deeds of trust due and payable, and requested the said trustee, under the terms of said deeds, and by any other means by which he might be entitled under the terms of the deeds in trust, to proceed at law and in equity to collect the same.

On the said 28th day of April, 1910, the said R. B. Arrington, after conference with A. H. Burroughs, trustee, concurred in the opinion that they should file a bill in the Circuit Court of the United States at Asheville, N. C., for the purpose of having said Burroughs appointed receiver of the said property, and for the other purposes set out in the said bill.

The said A. H. Burroughs drew the bill while in the city of New York, and at the same time drew the order which he proposed to have signed by the Circuit Judge.

At the same time, and in his office, A. H. Burroughs dictated a letter to be signed by Mr. Allsop, the president of the said Toxaway Company in the city of New York, consenting to said appointment, to be used upon his application to the Circuit Judge for the appointment of himself as receiver, and the same was signed in Burrough's office. That he took the bill and order drawn by him to the city of Richmond,

on May 4, 1910, where Judge Pritchard, judge for the Fourth circuit, was attending the Circuit Court of Appeals, and read the same to him, together with the letter from Mr. Allsop, the president, whereupon the order as drawn was amended by the judge, by the adding thereto the words:

"Any person who is not a party hereto, and claiming an interest in the subject-matter of this suit, may, upon giving five days' notice in writing, move for a dissolution of the injunction hereby granted, for the discharge of the receiver, or for any other modification of this order.

"May 4, 1910."

The judge signed said order as thus modified, under the circumstances testified to by Burroughs. The bill was also filed in the clerk's office at Asheville, N. C.

On May 7, 1910, certain parties therein named, "stockholders and creditors of the company, gave notice to the attorneys for the complainants that they would apply to the court to vacate the order appointing said Burroughs as receiver.

On said day the hearing of the motion was continued until May 31, 1910. On May 28, 1910, notice was given that the defendant Toxaway Company would move the court to dismiss the bill and vacate the order made therein. Upon the hearing, the holders of the minority of the outstanding bonds came in and offered to pay to the complainant Arrington the full amount of the bonds held by him, including interest thereon, which was accepted by him, and said bonds and receiver's certificates turned over to said Jennings. All of which appears on the record.

The annual meeting of the stockholders of the said Toxaway Company had been called to be held at Brevard, N. C., on the 4th day of May, 1910. This was well known to the said Allsop, R. B. Arrington, and A. H. Burroughs. This fact did not appear in the bill, nor was it communicated to the Circuit Judge by the said Burroughs at the time he applied for the order hereinbefore recited.

At the said annual meeting the stockholders, Mr. Allsop, E. H. Jennings and other stockholders being present, informed them of his action in regard to writing the letter, addressed to Judge Pritchard, consenting to the appointment of Burroughs as receiver. Some objection was made, on the part of Jennings, to this action; but nothing was done by the stockholders in regard thereto. Mr. Allsop was unanimously re-elected president, and the same directors, with the exception of two who had died and one who had resigned, were elected; others being elected to fill the vacancies. Mr. Allsop states, in an affidavit filed June 6, 1910:

"In this meeting some complaint was made by one of the stockholders of my having consented to the appointment of a receiver without first getting express authority from the company so to do; but no action was taken to revoke anything I had done, and, on the contrary, the consensus of opinion of those present was that a receiver was necessary. In fact, no one contended that a receiver was not necessary. We all knew and realized that the company was insolvent. So far from anything I had done being condemned, I was at that meeting re-elected president of the company."

Affidavits were filed on the hearing before Judge Pritchard by Mr. Brunot, secretary of the company, and Mr. Hayes and Mr. Shipman,

directors, setting forth that the bonded indebtedness on January 1, 1910, with accrued interest, was $329,120; that other and unsecured indebtedness amounted to $298,834, a large majority of which was due to the stockholders, several of whom join in the motion to vacate the order appointing the receiver and the exceptions to the report of the special master.

It does not appear that any of these creditors, other than Mr. Allsop, were notified of the application for, or appointment of, the receiver. The nominal assets of the company, other than the real estate, and the furniture in the hotels, are some $36,000, estimated to be worth some $25,000.

That, prior to the filing of the said bill, the said Arrington, acting for J. B. Duke, had taken options upon the property of the Toxaway Company for the purchase thereof, at the price of $500,000, which said options were drawn by said Burroughs at the request of Mr. Duke. The option for the purchase of the land lying on the north and west side of the Blue Ridge expired March 4, 1910, and was not renewed. The option for the purchase of the remainder of said property, expiring on said day, was renewed, and expired May 4, 1910.

That said Arrington and Duke had employed counsel at considerable expense to examine the titles of the property of the said Toxaway Company, and they had reported that, in respect to a large number of said tracts, there were defects in the title. A large portion of said defects were of little or no importance, and easily remedied. That, in respect to other portions, litigation was pending.

At the time of and before the purchase of said bonds, said Arrington was the private secretary of B. N. Duke and J. B. Duke, both being officers of the Southern Power Company, a North Carolina corporation, purchasing and developing water power in the state of North Carolina. The office of said Arrington was in the same building as both of said Dukeses.

That said J. B. Duke furnished the money to Arrington for the purpose of purchasing the aforesaid bonds. Said A. H. Burroughs, at the time hereinbefore named, and at all times thereafter, had his office in the same building with that of the said Arrington.

At the time of the purchase of the said bonds, and at all times thereafter, up to and including the appointment of the receiver, the said J. B. Duke and B. N. Duke, as representatives of the Southern Power Company, were interested in the proposed purchase of the property of the Toxaway Company, upon which there was undeveloped water power.

That the said B. N. Duke accompanied the said A. H. Burroughs to Richmond at the time he applied for his appointment as receiver, and signed his bond as such receiver, in the sum of $25,000.

The removal of the trustee, the substitution of said Burroughs, and the direction to proceed and collect said bonds, all occurred on the 28th day of April, 1910, and all the other acts in connection with and referring to the appointment of receiver were done between said date and the 4th day of May, 1910, inclusive.

At the time Mr. Allsop signed the said letter, he had sold all of his holdings of bonds in the Toxaway Company, and held only 10 shares

of stock in said company. He was an unsecured creditor to the amount of $65,321.

While in New York, before his appointment, Mr. Burroughs, anticipating that he would, upon his application, be appointed receiver, drew the order therefor, carried the same to Richmond, and, before leaving New York, borrowed from the Great Falls Power Company, a corporation of which Arrington was secretary, and in which the said Dukeses were interested, $7,500 to meet the demands for insurance and taxes due by the Toxaway Company, promising to deliver certificates of indebtedness, as receiver, or to be personally responsible therefor.

Upon his appointment as receiver, Mr. Burroughs came at once to Asheville, N. C., saw the insurance agents, who were carrying the policies of insurance on the property, and made arrangements with them to pay the premium thereon, for which they held the notes of the company. He then went to Brevard, N. C., and Toxaway, at which last-named place the company had located valuable hotels and other buildings. He conferred with Mr. Brunot, the secretary and treasurer, made the arrangements to pay taxes, and lease the hotels, stores, etc., and also made a contract with Mr. Brunot to act as his agent. He also notified the sheriff not to proceed with the enforcement of an execution in his hands for a judgment recovered by Judge Shuford for some $500, which had been levied upon the personal property of the company. He also employed a caretaker for the protection of the property, and made a contract with Mr. Ramseur, a surveyor, to survey the lands, etc. He also obtained from Judge Shuford, who had been acting as the attorney for the company, and from the secretary and treasurer, a list of the suits pending against the company. Mr. Burroughs states:

"Soon after the bill was filed, I do not remember how many days, after notice was served upon me to the effect that motion would be made in this suit, five days thereafter, to set aside and vacate the order that had been made by Judge Pritchard and discharge the receiver—knowing, as I did, that the titles to the land were defective, and that clouds would have to be removed from the title, otherwise the lands would have to be sold at a sacrifice, which I did not believe any court would permit—I had spoken to Judge H. B. Stevens and Mr. R. S. Lucas in regard to prosecuting the suit. I had spoken to these gentlemen especially, because they were familiar with the clouds on the title. I requested them to see Judge Charles A. Moore, and retain him on my behalf as trustee and receiver."

Mr. Burroughs also states that, when he applied to Judge Pritchard for the order appointing him receiver, he told the judge it would be necessary to file a supplemental bill in order to bring in all of the parties, etc.

At the request of Mr. Duke, Mr. Burroughs drew the options given by the Toxaway Company to Mr. Arrington.

Mr. Burroughs states that he spent one week in North Carolina, including two nights and one day on the property; he had considerable correspondence in regard to the property; that he was one of the general counsel for the American Tobacco Company, receiving a salary for his time and services.

The evidence shows that several suits, involving the title to small portions of the property, were pending in the courts of North Carolina; that some of them had been, and others were, in the process of being compromised. The company was represented in said suits by skilled attorneys, familiar with the law and the facts involved therein.

Upon the hearing of the motion to vacate the order and dismiss the bill, Judge Stevens, Judge Moore, and Mr. Lucas represented the complainants and opposed said motion. They drew affidavits, prepared answers, argued the motion, and rendered other service in that connection. There is no evidence that any services were rendered by counsel in connection with the receivership, other than those mentioned.

Mr. Allsop, president of the Toxaway Company, had no other power or authority to consent to the appointment of a receiver than such as pertained to his said office. No resolution was adopted, or other action taken, by the stockholders or directors of the company, authorizing him to consent thereto, nor were they notified of the proposed application for the appointment of a receiver until the order was served upon the officers of said company in North Carolina.

Upon the foregoing facts, and other facts relevant to the motion and the exceptions, all of which appear in the record, it must be noted that no question is raised, or considered, in regard to the jurisdiction of the Circuit Judge to appoint the receiver. There is no allegation in the bill that the defendant company is insolvent, or that its officers were threatening to dispose of its property, or otherwise impair the security of the bondholders or unsecured creditors, nor did said bill contain any prayer for a foreclosure. There is sufficient allegation in the bill to confer jurisdiction upon the court.

The sole question to be considered upon this motion relates to the conduct of Mr. Burroughs. For the purpose of passing upon this question, it is necessary that his action in respect to the transactions to which he was a party, or of which he had knowledge, both before and after his appointment, should be considered.

It must also be noted that the amount to be allowed him for counsel fees is not presented for consideration, until the conclusion is reached that the employment of counsel was either necessary or prudent at the time, under the circumstances, or for the purpose stated by the receiver. The court, in this connection, does not deal with counsel, but, in proper cases, makes an allowance to its officer for counsel fees as a part of the reasonable and necessary expense incurred in the discharge of his duties. If such allowance be proper, the court will consider the reasonableness of the amount contracted to be paid by the receiver. It must also be noted that the services rendered by counsel to the receiver in connection with the motion to vacate the order appointing him and dismissing the bill are not proper charges against the estate. A receiver is an officer of the court, and whether or not the order appointing him shall be vacated is not a matter to be brought into litigation by him. That question can be raised only by the parties to the bill.

The fact that, in this instance, Burroughs, as trustee, was one of the complainants, and also receiver, does not in any way affect the

principle involved. The sole question before the court, upon that motion, was whether the complainants were entitled to maintain the bill and place the property in the hands of a receiver. With this the receiver has no concern, and no power to employ counsel or incur expense.

While, in extraordinary cases, it is proper, and may be advisable, to appoint a party to the action receiver, it is not usual to do so; and, when the court is asked to depart from the usual practice, a full, frank, and complete disclosure of all the facts relevant to the question should be made to the court.

Two questions, therefore, are involved in the motion before the court: First. What, if any, sum shall be allowed the receiver by way of compensation for amounts either paid by him, or contracted to be paid, for counsel fees incurred in aiding him in the discharge of his duties as receiver? Second. What, if any, amount shall be allowed him for his services?

Without questioning the motive of the complainants herein, it is difficult, if not impossible, to avoid the conclusion, upon all of the facts developed upon the record, that the effect of filing the bill, seeking the appointment of a receiver, naming Mr. Burroughs, etc., was to involve the company in long and expensive litigation.

It will be observed that it was impossible for the defendant company to dispose of one dollar of its property; the title thereto being vested in the trustee, with full power to enter into the possession and control thereof, sell the same, and do any and all things necessary for the protection of the interest of the bondholders. The provisions in the deeds in this respect are ample. The only act which the trustee could not do without the aid of the court was to raise money to pay the taxes and amounts due for insurance, and a small judgment held by Judge Shuford, and for this it was not necessary to put the property in the hands of a receiver. The record shows that the Colonial Trust Company, the former trustee, had in hand $3,525, for the payment of which no demand was made.

While the court has the power, under extraordinary conditions, to appoint a permanent receiver without notice, it behooves the complainant, when asking the court to do so, to make a full, frank, and complete statement of the facts upon which it is asked to exercise this extraordinary power.

A careful examination of the bill discloses that many facts, which would undoubtedly have affected, if not controlled, the action of the court, were neither set out nor were they stated to the judge at the time of the application. That the stockholders of the company were to hold a meeting upon the very day upon which the application was made, and that this was well known, both to the complainant Arrington and the trustee, was a fact which should have been communicated to the judge, either by an allegation in the bill or otherwise.

Passing that, however, the receiver was put upon notice, by the amendment made by Judge Pritchard to the order, which was drawn by Mr. Burroughs in New York, that the defendant, or any other person interested in the property, could, upon five days' notice, move to vacate the order and remove him as receiver. While by the order the

appointment was permanent, this very wise and prudent addition put him on notice that it was in fact a temporary receivership. "It was his duty to administer the receivership as a trust, under the authority and guidance of the court. If the receiver incurred unadvised and unnecessary obligations, it is at his own risk." 3 Street's Fed. Equity Prac. § 2615. When, as in this case, the order appointing the receiver is permanent in form, but "reserving leave for any interested party to appear within a limited time and object to the appointment, the practical effect of such a reservation is to make the appointment temporary in its nature." 3 Street's Fed. Eq. Prac. § 2509.

In Farmers' Loan & Trust Co. v. Cape Fear R. R. Company (C. C.) 62 Fed. 675, Simonton, Circuit Judge, discussing the effect of an order containing a similar provision, said:

"The order reserved leave to any party interested therein to intervene and move to rescind or modify the same within 60 days from the date thereof. The practical effect of this reservation was to make the appointment of the receiver temporary in its nature, until the 60 days had expired, or objection thereto had been heard and considered."

On May 7th, three days after his appointment, the stockholders and creditors of the company served notice upon the receiver that they would move the court to vacate the order and remove him as receiver. This should have put him on notice that no further action should be taken by him, incurring expense or subjecting the estate to a burden, until this motion was disposed of. It would seem that common prudence would have suggested to him, after protecting the property from sale for taxes, securing the continuance of the insurance policies, and having an injunction against the enforcement of an execution, to have awaited further action until the motion, at the end of five days, could be heard.

It does not appear very clearly on what day the receiver entered into a contract with the attorneys—whether before or after the notice was served upon him. Certainly, if after the notice, it was both imprudent and improper for him to have done so. It further appears that many, if not a very large majority, of the suggested defects in the title, were of little or no importance, and that the few suits then pending were in the hands of competent and skilled attorneys in process of compromise, and no immediate trials impending.

In Huff v. Bidwell, 151 Fed. 563, 81 C. C. A. 43, the court, upon the application of the complainant, appointed a temporary receiver, without notice. Thereafter, upon notice, the court made the temporary receivership permanent, without objection on the part of the defendants. Upon a final hearing, Shelby, Circuit Judge, said:

"A court of equity has the power to make such appointment without notice; but, as has been often said, such power should never be exercised, except in a clear case of imperious necessity, when the right of the plaintiff, and the relief to which he shows himself entitled, can be secured and protected in no other way. * * * The case has now reached a final decree on the merits, and we can do nothing as to the appointment of the receiver, except to cause the cost growing out of the receivership to be taxed as seems right under the circumstances. We therefore direct that all the cost of the receivership of every nature and kind, from the appointment of the receivership, without notice, on August 5, 1899, until the defendant seemingly acquiesced in the re-

newal of the order of appointment on May 31, 1902, be taxed against the plaintiffs who procured the appointment."

"A receiver is not authorized, without the previous direction of the court, to incur any expenses on account of property in his hands, beyond what is absolutely essential to its preservation and use, or contemplated by his appointment." Cowdrey v. Galveston R. R. Co., 93 U. S. 352, 23 L. Ed. 950.

Without further extending the discussion, it is manifest that, taking Mr. Burroughs' testimony, given before the special master, and the affidavits filed on the hearing, to be true, under the circumstances surrounding the suit from and before its institution, the employment of counsel for the purpose of engaging in the litigation proposed was unnecessary and unwarranted. Without passing upon the reasonableness of the amounts charged by counsel for the contemplated services, they are not proper charges against the property of the defendant company. It is not permissible for a receiver, under the circumstances disclosed by the record, to incur any other or further expenses than are necessary for the preservation and protection of the property until the motion for his removal is disposed of.

The Circuit Judge may well have supposed that, in view of the statement made by Mr. Burroughs that it would be necessary to file a supplemental bill after he had informed himself of the facts and conditions surrounding the property, until such bill was filed and the courts made acquainted with such facts, no further action, in that regard, would be taken.

The claim for counsel fees is disallowed. In regard to the allowance to the receiver for his service, it would seem that, for the same reasons, he should look to the complainant Arrington for his compensation. It is insisted that, because the minority bondholders came in, upon the hearing of the motion to vacate the order, and paid Arrington the full amount of his bonds, including interest, the receiver should be regarded as having collected that amount for Arrington. It would seem to be a reasonable deduction from the course of the proceeding "from start to finish" that, if Arrington had notified the minority bondholders that he wished the money which he had voluntarily paid out but a short time prior thereto, before exercising the power to remove the trustee, it would have been paid to him. It is not just that, for the privilege of doing so at the first opportunity, they should be required to pay several thousand dollars cost and expense.

It appears that Arrington purchased the bonds before he took the options to purchase the property. It is evident that, when he did make the purchase, he regarded the property conveyed in the trust deeds amply sufficient to pay them. He knew that it had defaulted in the payment of interest. There is nothing in the record to show that any change in the condition occurred between that time and the removal of the trustee and other steps leading to the application for a receiver, except the nonpayment of taxes and Judge Shuford's execution. While there is no provision in the deed requiring notice to be given the stockholders, or the minority bondholders, or the original trustee of the proposed removal, and substitution of another person as trustee, common fairness, as well as prudence, would, for manifest reasons, suggest the propriety of doing so.

Again, when Mr. Burroughs was appointed to, and accepted, the position of trustee for a large and valuable property, worth a half million dollars, in a distant state, and with which he was entirely unacquainted, he came under an obligation to represent and protect the interest of the minority bondholders, the unsecured creditors, and all of the stockholders as well. It will hardly be denied that his relation to the property involved the duty of notifying all parties in interest before proceeding, at the request of one bondholder, to bring the property into expensive litigation and a suspension of its corporate powers. This he entirely failed to do. The majority of stockholders and bondholders can usually protect their interest. It is the peculiar province and duty of a disinterested trustee, and of the court, to protect the interest of the minority.

Stress is laid upon the fact that, at the stockholders' meeting on May 4, 1910, nothing was done repudiating the action of Mr. Allsop in writing the letter consenting to the appointment of Mr. Burroughs receiver; but it is also shown by Mr. Burroughs' statement that Jennings did make objection, and on the 7th day of May, 1910, he, with other creditors representing large amounts and stockholders, served notice on Mr. Burroughs that they would ask the court to vacate the order and remove him as receiver. It is difficult to see how, under the circumstances, they could have acted more promptly. In view of the fact that he is allowed $500 for his services as trustee, which it would seem, under the circumstances, is ample, and in view of all the other facts apparent upon the record, the property should not be burdened with any further allowance.

In reaching the conclusion herein set forth, it is not the purpose of the court to question the integrity of Mr. Burroughs. It may be that the course pursued by him in the premises is usual and in accordance with the practice. If so, it shows the necessity for emphasizing the elementary and oft-repeated truth "that the power of appointing receivers, like the injunction, is an extraordinary remedy, and that such a proceeding ought never to be instituted, except in case of necessity, and upon a clear and satisfactory showing that an emergency exists, such as makes the appointment of a receiver requisite in order to protect the interests of one or more of the parties to the controversy."

The amount borrowed by Mr. Burroughs, and expended in payment of interest, the taxes, insurance, and execution, has been repaid by the minority bondholders. The question regarding the allowance of the amount expended or liability incurred for surveying, caretaking, and supervision is not referred to the master, nor involved in his report; hence they are not dealt with in this opinion. The master allowed Mr. Burroughs, trustee, for his services in connection with the property, $500. It was his duty, as trustee, to visit the property and protect it, so far as he was able, from sale for taxes, or under execution, and to provide for insurance, make leases, etc. These things he should have done in his capacity as trustee. He borrowed the money for that purpose, upon his personal credit, and expended it in a proper manner.

It is manifest that the original trustee, of which Jennings, the minority bondholder, was president, was derelict in its duty, and the

time and condition demanded that some action be taken to protect the property from impending danger. As Burroughs has been removed from the trusteeship, and the orders made herein vacated, it is proper that he be paid for his services in that connection. While the sum of $500 for the service rendered is large, taken in connection with the value of such service to the company and his personal expense in coming to North Carolina, the finding of the master in that respect is approved.

Much stress is laid by counsel upon the action of Mr. Allsop, the president, in consenting to the receivership and the appointment of Mr. Burroughs. Without inquiring whether it is within the scope of the power of the president of a going concern to consent, without notice to the directors and stockholders, to an act so fundamental in its character and so destructive of the corporate powers, it is evident, from the testimony of Mr. Burroughs and the affidavits of Mr. Allsop, that, without attributing any improper motive to him, he should have notified the stockholders of his intended action.

It is further insisted that, the order of reference to the special master having been made by consent, his conclusions have the force and effect of an award by an arbitrator, and cannot be reviewed by the court. The case of Westall v. Avery, Trustee, 171 Fed. 626, 96 C. C. A. 428, is relied upon to sustain that contention. An examination of that case fails to sustain the position of counsel. There, the parties "by consent constituted Judge Burwell in practical effect an arbitrator to settle and determine the matters in controversy." He was not appointed "referee or master, nor did the order constitute him a special master." Here Mr. Parker is expressly appointed by the court, by consent, special master. The distinction is obvious. But here the special master never undertook to pass upon or decide the question whether the amounts which he found to be reasonable were proper charges against the defendant company. He expressly refrains from doing so.

Let an order be drawn in accordance with this opinion.