LAZARUS JEWELRY CO. et al. v. STEINHARDT et al.

(Circuit Court of Appeals, Fifth Circuit. December 17, 1901.)

No. 1,074.

CREDITORS' SUITS—CONDITIONS PRECEDENT—ISSUANCE OF EXECUTION.

The issuance of an execution is not necessary to entitle a judgment creditor to maintain a suit in equity to subject property fraudulently transferred by the debtor, where, by statute, the judgment is made a lien on all the defendant's property.

Appeal from the Circuit Court of the United States for the Southern District of Georgia.

This is a suit in equity, brought by Samuel W. Steinhardt and others, judgment creditors of Max Lazarus, against the Lazarus Jewelry Company, a corporation, and Max Lazarus. The plaintiffs are all citizens of New York, Connecticut, and other states, none of them being a citizen of Georgia. The Lazarus Jewelry Company is a corporation chartered under the laws of Georgia, and Max Lazarus is a citizen of Georgia, residing in the Southern district of Georgia. The judgments or decrees which this suit is brought to collect were rendered in an equity case by the superior court of Bibb county, Ga., on the 19th of February, 1895. The decrees were in favor of 79 different creditors, and fixed the amount due each. The clerk of the court, on application, was ordered "to issue separate executions in favor of said plaintiffs for the amounts respectively due each." These judgments, without interest, in the aggregate, amount to $22,927.96. No execution was issued on the judgments. The owners of 32 of these judgments, amounting, in the aggregate, to $6,839.50, join in the present suit. They sue for themselves and other creditors who may become parties. The claim of one of the plaintiffs in the present suit in his own right and as assignee of other of these judgment creditors, who were also citizens of other states than Georgia, exclusive of interest, exceeds the sum of $2,000. Max Lazarus is insolvent, owning no property in his own name. The bill, as amended, shows the foregoing facts, about which there is no controversy, and then alleges: "That the said Max Lazarus and Arthur Lazarus, for the purpose of defrauding your orators, used the name of Edward Wolff, * * * and the name of Jacob Lazarus, * * * and the name of A. S. Cohen, * * * and, for the purpose of placing the money and property of the said Max Lazarus beyond the reach of your orators and their other creditors, on the 15th day of March, 1894, filed an application to the superior court of Bibb county to be incorporated under the name of the Lazarus Jewelry Company, alleging its capital stock to be five thousand dollars ($5,000), all of which was alleged to have been paid in at the time of the filing of said application, with the privilege of increasing the same to twenty-five thousand dollars ($25,000). On information and belief orators charge that neither the said Edward Wolff, A. S. Cohen, nor Jacob Lazarus paid a single dollar into said corporation, or subscribed for any of the stock thereof, nor was any stock ever issued to them, or either of them; but the said Max Lazarus, who really put the money into said corporation, and who is now the sole owner and proprietor thereof, simply used the names of Edward Wolff, A. S. Cohen, and Jacob Lazarus as a cloak to cover up his money and property from your orators and his other creditors, and formed said alleged corporation by reason of the fact that he, knowing of the pending proceeding in which your orators would obtain said large money decree against himself and his brother, could not carry on business in his own name without paying said decree, and he has continued to conduct said business since the rendition of said decree under the name of the Lazarus Jewelry Company, and under said corporate name now holds all of that stock of jewelry and merchandise in the store occupied by said Lazarus Jewelry Company, at 553 Cherry street, in the city of Macon, and the books of account, choses in action, cash, etc., therein, and the cash on deposit in the Exchange Bank of Macon and other banks in the name of said jewelry company, in trust for your orators. Your orators allege and show on information and belief that no stock was ever issued to any one by said corporation; that there has never been any meeting of the stockholders; no minutes of any of the proceedings of said corporation have ever been kept; that no one is interested therein other than the said Max Lazarus; and that he has issued no stock to himself, because he knew that, if he should do so, said stock could be levied upon by the sheriff of said county of Bibb under the executions issued upon said decree. Orators show that William Wolff, of said county of Bibb and state of Georgia, is held out as president of said corporation, but orators distinctly charge that he has no stock therein, and has never owned any stock therein. He states that he has never attended a meeting of its stockholders or directors,

that the said Max Lazarus has entire control and management, and that he has no interest therein whatever." The effect of these and other averments is that Max Lazarus is in fact the owner of all the assets of the corporation, and that it was organized to be used as a cover for his property, and to defraud his creditors. There is a prayer for the appointment of a receiver; that such receiver be directed to sell the property so held by the corporation, and that the proceeds of the sale be applied to the payment of the plaintiffs and other creditors of Max Lazarus; and also a prayer "for such other and further relief as may seem meet and proper." The defendants answered, denying fraud, and claiming that the corporation was organized in good faith, and that the stockholders were as follows: "A. S. Cohen subscribed 1 share, William Wolff subscribed 1 share, Jacob Lazarus subscribed 48 shares; making the aggregate 50 shares." The motion to appoint a permanent receiver coming on to be heard, numerous affidavits were offered to sustain the respective contentions of the parties. The court, after hearing argument and taking the case under advisement, made an order appointing a permanent receiver. From that interlocutory order an appeal is taken by the defendants to this court. 31 Stat. 660. There are several assignments of error, all based on the decree appointing a receiver.

Washington Dessau and N. E. Harris (Robert Hodges and Roland Ellis, on the brief), for appellants.

Geo. S. Jones, Isaac Hardeman, B. M. Davis, and C. A. Turner (Jos. F. Fried, on the brief), for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Is the failure of the plaintiffs to sue out executions on the judgments in the state court fatal to their right to maintain this suit in equity to subject their debtor's property to the satisfaction of the judgments? In Georgia judgments are, by statute, liens on all the property of the defendant, both real and personal, with exceptions not material to this case. Code Ga. 1895, §§ 5351, 5353, 5355. The appellants, who were the defendants in the court below, contend that a bill in equity will not lie on behalf of judgment creditors to subject property of their debtor, held for him by a third party in secret trust, to the satisfaction of their judgments, until a fruitless attempt has been made for its collection by execution at law. In creditors' suits against debtors it is frequently said that a court of chancery lends its aid to a court of law, and exercises a jurisdiction merely ancillary in character, and that, therefore, the party plaintiff who invokes its aid must show, to establish its jurisdiction, that he has exhausted his legal remedies. It is, of course, true that a creditors' suit cannot be sustained in equity in a court of the United States where a plain, adequate, and complete remedy may be had at law; and the general rule is that the creditor, before proceeding in equity, must obtain a judgment, and, as said by Pomeroy, certain steps must be "taken towards enforcing or perfecting said judgment before a party is entitled to institute a suit of this character." "In this," the author adds, "there is uniformity of opinion, but the difficulty arises in determining exactly how far a plaintiff should proceed after he has obtained his judgment." 3 Pom. Eq. Jur. § 1415. There is much apparent conflict in the authorities on this subject, growing out of the different effect which judgments and writs of execution have in

the several states.   3 Pom. Eq. Jur. 1415, note 4, at page 464.  We think, however, that it may be safely held that there is a remedy in equity when the action at law has been prosecuted to judgment which is made a lien on the defendant's property by statute; or where such lien is fixed by the issuance or the levy of an execution; and where there is some impediment by fraudulent conveyance or other contrivance to the enforcement of the lien at law, the defendant having no property except that so incumbered subject to execution to satisfy the judgment.   It is often asserted that the failure to sue out an execution is fatal to a creditors' suit in equity on the judgment; but when the suit is, like this, to subject property of the defendant fraudulently transferred to or held by a third party, it will generally be found that it was necessary in the particular case to issue an execution to fix a lien on the property sought to be condemned. Such was the reason given for dismissing the bills in the first English cases on this subject.   In Angell v. Draper, 1 Vern. 399, personal property was sought to be condemned by the judgment creditor.   A demurrer to the bill was sustained because the plaintiff had not alleged that he had taken out execution; "for, until he had done so, the goods were not bound by the judgment."   In Shirley v. Watts, 3 Atk. 200, a judgment creditor, who had not taken out execution, brought a bill against the defendant to redeem, who was a mortgagee of the leasehold estate, and likewise a bond creditor; and the master of the rolls dismissed the bill "because till execution the plaintiff has no lien on the leasehold estate."   It is apparent that each of these bills would have been sustained if the judgment itself had been a lien. In McNairy v. Eastland, 10 Yerg. 310, the court held, after examining the authorities with much care, that the issuance of an execution was unnecessary to confer jurisdiction on the equity court in cases where the judgment itself was a lien.   It was held in that case that the true principle upon which chancery assumes jurisdiction in such cases is to enforce the equitable lien created by the judgment.   This doctrine was reaffirmed in Montgomery v. McGee, 7 Humph. 234.   In Fleming v. Grafton, 54 Miss. 79, the court held that the judgment creditor could proceed in equity to set aside a fraudulent conveyance whenever he could show that he had a lien.   "If he is a judgment creditor, he must show that he has a lien—either by judgment, if the statute gives such lien; if it arises from the execution, he must show that one has been issued; or, if it arises from a levy of the writ, that must have been made."   In Cornell v. Radway, 22 Wis. 251, the court considered the question made by the defendant that the fraudulent conveyance could not be assailed because the creditor had not exhausted his remedy by the issuance of an execution and return nulla bona. The court held that, inasmuch as the judgment, by statute, was a lien upon the land, it followed that, without the issuance and return of execution, the creditor could attack the conveyance as a fraudulent obstruction to an adequate remedy at law.   In New York the lien was created by the issuance of the execution.   In Beck v. Burdett, 1 Paige, 305, the chancellor held that the bill might be filed to subject the property to execution and to remove the fraudulent obstruction as soon as the lien had been fixed by the issuance of execution.   The

case shows clearly that the issuance of the execution would have been unnecessary if the judgment itself had fixed the lien. In Holt v. Bancroft, 30 Ala. 193 (204), the court held that the plaintiff might go into equity whenever he had a lien upon the defendant's property for the debt due to him, without exhausting legal processes or remedies.

Our attention has not been called to a decision of the supreme court which involves the exact question raised in this case. In analogous cases, however, that court has made observations that indicate an opinion in conformity with the cases which we have cited. In Sage v. Railroad Co., 125 U. S. 361, 8 Sup. Ct. 887, 31 L. Ed. 694, the court said:

"In the present case, it is true, Sage did not sue out execution upon his judgment, and have a return nulla bona. But that point has become immaterial. The railroad company made no such objection at the time the receiver was appointed. Besides, suing out an execution would, according to the facts and the admission of the parties, have been an idle ceremony, causing useless expense, and bringing no real benefit to the plaintiff."

In Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004, the court incidentally referred to the question. After quoting approvingly some of the cases that we have already cited, the court said:

"The foundation upon which these and many other similar cases rest is that judgments and fruitless executions are not necessary to show that the creditor has no adequate legal remedy. * * * But, without pursuing this subject further, it may be said that whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting legal processes or remedies. * * * Indeed, in those cases in which it has been held that obtaining a judgment and issuing an execution is necessary before a court of equity can be asked to set aside fraudulent dispositions of a debtor's property, the reason given is that a general creditor has no lien; and, when such bills have been sustained without a judgment at law, it has been to enable the creditor to obtain a lien, either by judgment or execution. But when the bill asserts a lien or a trust, and shows that it can be made available only by the aid of a chancellor, it obviously makes a case for his interference."

The appellants rely here on the case of Jones v. Green, 1 Wall. 330, 17 L. Ed. 553. In that case the complainant failed because he did not prove that executions were issued upon the judgments and returned unsatisfied, as he had alleged in his bill. An examination of that case, we think, shows that the judgments in question did not constitute liens. The court expressly recognized the jurisdiction in equity when the enforcement "of the legal remedy is obstructed by some incumbrance upon the debtor's property, or some fraudulent transfer of it," and said that in such case "the equitable relief sought rests upon the fact that the execution has issued, and a specific lien has been acquired upon the property of the debtor by its levy, but that the obstruction interposed prevents the sale of the property at a fair valuation." It is obvious, we think, that, if the judgment had created a lien, the court would not have held that it was necessary to prove the issuance and levy of the execution.

The judgments involved here are made liens by statute. They would not have been made more binding by the issuance of an execution on each of the several judgments. The defendant in judg-

ment owned no property in his own name subject to execution. The property on which the lien was fixed by the judgments was held, it is alleged, in secret trust for the judgment defendant. The corporation that so held it had, according to the averments of the bill, been chartered to be used as a cloak to defraud the plaintiffs. The property, with its title so incumbered, would not sell under execution for nearly its value. On these facts we hold that equity has jurisdiction without the issuance of executions on the judgments. Schofield v. Coke Co., 34 C. C. A. 334, 92 Fed. 269; McCalmont v. Lawrence, 1 Blatchf. 232, Fed. Cas. No. 8,676; Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004. The case is before us on appeal from an interlocutory decree. We do not deem it necessary to comment on the evidence. After a careful examination of the pleadings, affidavits, and other evidence, we cannot say that the court erred in appointing a receiver.

We have examined the questions raised by the other assignments of error, and we hold that none of them is well taken.

The decree of the circuit court is affirmed.