HUFF et al. v. BIDWELL et al.

(Circuit Court of Appeals, Fifth Circuit. February 26, 1907.)

No. 1,566.

1. COURTS—JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY.

A creditors' suit brought by two complainants, one of whom has a judgment on which more than $2,000 is due, exclusive of interest and costs, to subject property of greater value than $2,000, involves an amount sufficient to confer jurisdiction on a federal court, although the claim of the other complainant is less than that amount.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 891.

Jurisdiction of Circuit Courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Poper, 36 C. C. A. 459.]

2. CREDITORS' SUITS—EQUITY JURISDICTION—ADJUSTMENT OF INCUMBRANCES.

Where the property of a judgment debtor is so incumbered by liens and taxes that, although the judgment is a lien thereon under the laws of the state, such lien cannot be effectively enforced by execution, the creditor may maintain a suit in equity for the adjustment of the rights and priorities of the several lienholders.

3. RECEIVERS—AUTHORITY TO APPOINT—APPOINTMENT WITHOUT NOTICE.

While a court of equity has the power to appoint a receiver without notice to the defendant, such power should never be exercised except in a clear case of imperious necessity, when the rights of the plaintiff and the relief to which he shows himself entitled can be secured and protected in no other way.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 52, 53.]

4. EQUITY—LEAVE TO FILE CROSS-BILL—DISCRETION OF COURT.

The granting or refusing of permission to file a cross-bill is largely in the discretion of the court, and the refusal of such permission in a cause which had been pending for several years after it had been heard and the merits passed on was a proper exercise of such discretion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 460–462.]

Appeal from the Circuit Court of the United States for the Southern District of Georgia.

A. L. Miller, T. S. Felder, Nathaniel E. Harris, Minter Wimberly, and P. S. Hill, for appellants.

Jno. A. L. Smith, Marion W. Harris, Isaac Hardeman, Geo. S. Jones, W. G. Smith, John I. Hall, Olin J. Wimberly, and James L. Anderson, for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. 1. The appellants challenge the jurisdiction of the Circuit Court.

The suit is by William L. Bidwell, a citizen of the state of Connecticut, and Franklin E. Woodward, a citizen of the state of New York, against W. A. Huff, Walter Huff, Edison Huff, and A. P. Herrington, all citizens of the state of Georgia, and the mayor and council of the city of Macon, a Georgia municipal corporation. It is a creditors' bill, the complainants being judgment creditors of W. A. Huff. The judgment in favor of Woodward, the collection of which is sought in the suit, is for $2,400 principal, and $105.72, interest to December 11, 1897. The judgment in favor of Bidwell is for $1,714.12, principal, and $115.41 interest and costs. The suit is by citizens of Connecticut and New York against citizens of Georgia and a Georgia municipal corporation, and the claim of one of the plaintiffs exceeds the jurisdictional amount of $2,000. The value of the property of the defendant W. A. Huff sought to be condemned to the payment of his debts greatly exceeds $2,000 in value. These facts confer jurisdiction on the Circuit Court notwithstanding the judgment or claim of one of the plaintiffs is less than $2,000. If the bill had been filed only by the plaintiff who had the judgment which exceeded $2,000, it would have clearly shown a claim for the jurisdictional amount, and, being a creditors' bill, it was necessarily a suit for the plaintiff and all other creditors with like claims, regardless of the amount of the claim, who chose to join in the litigation. Bidwell, although his claim was for less than $2,000, could have intervened in the suit and presented his claim and have been granted relief on his intervening petition. National Bank of Commerce v. Allen, 90 Fed. 545, 33 C. C. A. 169. We do not think that the jurisdiction of the court is defeated by his joining as plaintiff instead of intervening after the bill was filed.

It is insisted by the learned counsel for the appellees that, as this is a creditors' bill, the value of the estate to be condemned and distributed should be looked to as showing the jurisdictional amount, and that the Circuit Court would have jurisdiction if none of the plaintiffs' claims exceeded $2,000; that the amount involved is the value of the property sought to be condemned. Handley v. Stutz, 137 U. S. 366, 11 Sup. Ct. 117, 34 L. Ed. 706; Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870, and other cases are cited as sustaining this view. We need not decide that contention, as in this case we hold, for reasons already given, that the Circuit Court had jurisdiction.

2. It is also contended by the appellant that the Circuit Court had no jurisdiction in equity of the case made by the bill. The right of a judgment creditor to file a bill in behalf of himself and other judgment creditors who may elect to join in the suit and contribute to the expense has been recognized from time immemorial by courts of equity. Usually such bills, to show the inefficacy of the remedy at law, allege the issuance of an execution on the judgment and a return of nulla

bona. Such averments are made as to the judgments in this case. It is averred and proved by the defense, however, that the returns were made by the sheriff under the directions of the attorneys of the judgment creditors. The defendant in the judgment owned much valuable real estate, but it was so incumbered by tax liens, tax deeds, and mortgages that it does not appear probable that it could have been sold advantageously without an adjustment of the priorities and rights of the several lienholders. In Georgia, judgments are a lien on the property of the defendant, and we have heretofore held that "the issuance of an execution is not necessary to entitle a judgment creditor to maintain a suit in equity to subject property fraudulently transferred by the debtor, where, by statute, the judgment is made a lien on all the defendant's property." Lazarus Jewelry Co. v. Steinhardt, 112 Fed. 614, 50 C. C. A. 393. The same principle is applicable where there is any other real impediment to the enforcement of the lien at law, the defendant having no property subject to execution to satisfy the judgment, except that so incumbered. In this case, in view of all the facts, including the incumbrances on the property and the return indorsed on the executions, we cannot doubt that the learned Circuit Court decided correctly that the case was one of equitable jurisdiction. There seemes to be no doubt about the jurisdiction of a court of equity to enforce equitable judgment liens upon real estate at the suit of the judgment creditor. 1 Pomeroy, Eq. Jur. (3d Ed.) § 171, p. 203.

3. The bill in this cause was filed August 5, 1899, and on that day the Circuit Court, without notice to the defendants in the suit, appointed a "temporary" receiver to take possession of and to hold and manage "the property mentioned and described in the bill," referring to the property of the defendants, being certain lots in the city of Macon, and 305 acres of land in Bibb county, Ga. We find no facts stated in the bill or shown by the record that made it proper to appoint a receiver without notice to the defendants. A court of equity has the power to make such appointment without notice, but, as has often been said, such power should never be exercised except in a clear case of imperious necessity, when the rights of the plaintiff and the relief to which he shows himself entitled can be secured and protected in no other way. Joseph Dry Goods Co. v. Hecht, 120 Fed. 760, 764, 57 C. C. A. 64. More than two years afterwards, on May 31, 1902, the case came on to be heard upon application to appoint a permanent receiver. The court granted the application, appointing the temporary receiver permanent receiver. The decree states as a fact that none of the parties to said cause contested the necessity for such appointment. The language used may not be sufficient to show a consent decree, yet, when taken in connection with other facts disclosed by the record, it shows that the defendants made no objection to the appointment. The receiver had not much else to do except to collect rents on real estate, and it appears that these rents were in part, under order of the court, paid to W. A. Huff for his support and maintenance. An order was also made allowing him the use of part of the real estate on which a dwelling house was situated. The case has now reached a final decree on the merits, and we can do nothing as to the appointment of the re-

ceiver except to cause the costs growing out the the receivership to be taxed as seems right under the circumstances. We therefore direct that all the costs of the receivership, of every nature and kind, from the appointment of the receiver without notice on August 5, 1899, until the defendant seemingly acquiesced in the renewal of the order of appointment on May 31, 1902, be taxed against the plaintiffs who procured the appointment.

4. On March 3, 1905, five years and several months after the bill was filed, and after the proof had been taken, the cause tried, and the opinion of the court announced, the defendants W. A. Huff, Mattie J. C. Jennings (née Huff) and Edison Huff presented a petition praying to be allowed to file a cross-bill. The court refused to permit it to be filed, and this action of the court is assigned as error. When a cross-bill is necessary to the complete determination of the matters already in litigation, the court may permit one to be filed at any time before the hearing. To grant or to refuse permission to file a cross-bill is largely in the discretion of the court. Morgan's Company v. Texas Central Ry., 137 U. S. 171, 201, 11 Sup. Ct. 61, 34 L. Ed. 625. The courts generally disapprove of the filing of a cross-bill after the original suit has been heard and the merits have been passed on. Bronson v. Ry. Co., 67 U. S. 524, 532, 17 L. Ed. 359. The learned Circuit Court, we think, properly exercised its discretion in refusing to permit the cross-bill to be filed under the circumstances of this case.

5. The bill alleged that the plaintiffs had a judgment lien on certain real estate situated in the city of Macon, known as the "Kimball House lot"; that the city of Macon had imposed a pavement tax upon the lot for the sum of $2,060.61, besides other special assessments for sewer connections and curbing. This tax, it was alleged, amounted to confiscation of the property, and was in excess of any benefits conferred on the property. The act of the Legislature of Georgia which authorized the tax was alleged to be contrary to the due process clause of the Constitution of the United States and to the fourteenth amendment. The averments of the bill are long and elaborate, and it is unnecessary to repeat them here, as they are copied in the statement of the Circuit Court in the case of Bidwell v. Huff (C. C.) 103 Fed. 363, 368. The city of Macon demurred to the bill, and the demurrer was overruled, as shown by the report of the case just cited. 103 Fed. 363. The decision of the learned Circuit Court was made soon after the Supreme Court announced its opinion in Norwood v. Baker, 172 U. S. 292, 19 Sup. Ct. 187, 43 L. Ed. 443, and before the rendition of the later judgments of the Supreme Court bearing on the same subject, which are now familiar to the profession, and are cited in the briefs. The ruling of the Circuit Court in overruling the demurrers to the bill is assigned as error. But there are reasons why we are not called on to consider the constitutional questions raised by this assignment. The whole controversy between the plaintiffs and the city of Macon was the dollars and cents assessed as taxes on property in the city limits. The decree allows the city's claim for taxes to the amount of $3,546.38. The amount claimed by the city for taxes for paving and curbing on the Kimball House property was not allowed, but in decreeing a sale of this property it was directed that the standing master ascertain from

the evidence the extent and value of the benefit that was conferred on the property by the making of the improvements upon which the taxes were based. After this decree was entered, and before the appeal of the city to this court had been perfected, the plaintiffs tendered to the city the full amount of taxes claimed by it as due on the Kimball House property. The tender included the city's costs in the Circuit Court. The amount of the tender was received at first by the city, but was afterwards returned to the plaintiffs. The plaintiffs, however, continued the tender by a writing filed in the Circuit Court, and the tender is repeated in this court by counsel. We think the tender should have been accepted by the city, and the litigation between it and the plaintiffs ended. The practical way to end the controversy now is to amend the decree by allowing the city the full amount of taxes claimed by it on the Kimball House property which the plaintiffs are willing to pay, and its costs in the Circuit Court. The amount, with interest to March 5, 1906, as appears from the record, is $3,011.29. The decree will be so amended.

With the amendments herein indicated, the decree of the Circuit Court is affirmed. Under the circumstances, the costs of appeal, including the transcript, will be taxed one half to the appellant, the city of Macon, and the other half to the original complainants and appellees, Franklin E. Woodward, executor of the last will and testament of Emerson A. Phelps, deceased, and William L. Bidwell.