MEREDITH v. THOMPSON et al.

(Third Division.   Seward.   April 27, 1911.)

No. 483 (S. 9).

1. FRAUDULENT CONVEYANCES (§ 132*)—RETENTION OF POSSESSION.

Plaintiff recovered judgment in the district court in April, 1910.  On May 22, 1910, a deed from defendant Thompson of a date prior to the judgment was put on record conveying all his property, a mining claim, and his saloon building and stock of liquors and fixtures to defendant Cummings.  The grantor, Thompson, remained in possession of all the property, asserting usual control over it.  On a suit to set aside the deed from Thompson to Cummings, *held*, the conveyance was void as a fraud upon creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 407–424;  Dec. Dig. § 132.*]

2. FRAUDULENT CONVEYANCES (§ 281*)—EVIDENCE—BURDEN OF PROOF.

Under section 1043, Code of Civil Procedure, the fraud presumed for the want of change in possession is confined to personal property;  yet when both real and personal property are transferred by one instrument, which property constituted the entire estate of the debtor, and there was no actual change of possession of any of the property until long subsequent, these facts and other apparent badges of fraud are sufficient to shift the burden of evidence as to the bona fides of the sale from plaintiff to the defendants.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 800, 816;  Dec. Dig. § 281.*]

3. FRAUDULENT CONVEYANCES (§ 8*)—EVIDENCE—BADGES OF FRAUD.

In a suit to set aside a fraudulent conveyance, the following are badges of fraud: Close and intimate relations existing between the parties to the transaction claimed to be fraudulent; suit pending against the grantor approximately for an amount equal to the value of the property;  insolvency of the grantor;  unusual delay in recording conveyance;  a sale of all his property of mixed character to one grantee;  that at the time of purchase the property was unknown to the grantee;  that it was bought without an attempt to examine or request by the grantee for time to examine;  that the grantee did not take possession, but that grantor continued in possession and continued to show interest in and care for the property after the transfer;  that the instrument of transfer was left with or delivered to the

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

grantor; that it was hurriedly recorded by the grantor at an unusual time, to wit, 8:30 Sunday night; that no vouchers or documentary evidence of any kind to support the transaction are introduced or offered; that so few of the acts of the parties to the transaction were done in the ordinary manner; that, without an examination of the property, the grantee sold back to the grantor the saloon for $400, which grantor was immediately able to mortgage for $1,100.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 8, 9; Dec. Dig. § 8.*]

4. FRAUDULENT CONVEYANCES (§ 241*)—ACTION BY CREDITOR—CONDITIONS PRECEDENT.

Under the Code of Alaska, a judgment rendered in the district court is a lien upon real property from the date of the judgment, and the plaintiff may maintain a suit to vacate a fraudulent conveyance of the property by the defendant without execution or attachment. The rule with respect to personal property is different, for there is no lien upon personal property until after levy or attachment.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 694, 696–726; Dec. Dig. § 241.*]

This is a cause tried to the court without a jury, brought to set aside a deed alleged to be made by the defendant Thompson to the defendant Cummings in fraud of the former's creditors, to subject the property therein named to the lien of a judgment obtained by the plaintiff, Meredith, against Thompson and another, for an injunction and general equitable relief.

The complaint states that the plaintiff obtained in April, 1910, such judgment in this court for $1,598.60; that an execution and alias execution have been issued thereon, but both returned unsatisfied and no property found; that on May 22, 1910, a deed from Thompson to Cummings of certain real and chattel property was filed with the recorder of Cook's Inlet precinct, the property being described as a placer mining claim, called the "Battle Axe," certain log buildings, and the lot of ground on which one stood and a one-half interest in a saloon; that the deed was not made in good faith or for a valid consideration, but was the result of a conspiracy between defendants, and made with the intention of placing Thomp-

son's property beyond the reach of his creditors and to hinder, delay, and defraud the plaintiff in the collection of his judgment; that the defendant Cummings never took possession of the property, but that the same has remained at all times since in the custody and control of the defendant Thompson; that plaintiff's judgment was obtained against defendant Thompson and one Dave Wallace, as copartners; that Wallace left the territory in 1907 to defraud plaintiff in the collection of his claim; that he has not returned, has no property in the territory, and is insolvent; that in 1910 Thompson mortgaged certain of the personal property to one Murphy; that the mortgage and deed were made for the purpose of hindering, delaying, and defrauding plaintiff in the collection of his judgment; that by them all of Thompson's property, real and personal, was transferred; that defendant Thompson is insolvent, and neither Thompson nor Wallace has property, real or personal, individual or partnership, other than that conveyed by the deed.

Defendants have answered separately. The answer of the defendant Cummings admits the judgment, the issuance and return of executions, alleges the purchase by him from the defendant Thompson of the property in dispute, and that in February, 1910, he sold back to Thompson the saloon stock and rented to him the saloon building, denies that any other of the property has ever since the sale been in Thompson's possession, denies all fraud in the sale, and alleges its purchase by him for $1,500.

The answer of the defendant Thompson is substantially the same as that of Cummings, alleging his (Thompson's) possession of the saloon stock from February, 1910, to May, 1911; that the mortgaging of it by him was in good faith; and that the mortgage has been paid. The affirmative matter of the answer is put in issue by the reply.

The evidence establishes the following facts: In December, 1907, the plaintiff began an action in court against the defendant Thompson and Dave Wallace to recover $1,328.50; that the latter left the territory about that time, and has not returned. There is no evidence that he had or left property

in the territory of any kind. Cummings testifies that he and Thompson were partners in 1903 and 1904; that they had known each other for 17 or 18 years; that in August, 1907, he (Cummings) sold Thompson a one-half interest in a saloon at Katalla for $2,000, one-half cash; that he took Thompson's note for the other thousand dollars, due in one year, without interest. It is shown: That in 1909 Cummings was residing at Seward, Alaska, and Thompson at Susitna Station, Alaska, where the property involved in this suit, other than the mining claim, is situated. The mining claim is some 100 miles from Susitna Station, which latter place is over 100 miles from Seward. That in October, 1909, Cummings had never seen any of this property. That in that month both defendants were at Valdez, Alaska, where court was then in session, some 250 miles from Susitna Station, Cummings as a member of the grand jury and Thompson awaiting an expected trial of the suit brought by plaintiff against him and Wallace. Both defendants testified that at this time (October, 1909) Thompson executed to Cummings the deed attacked in the present suit; that Cummings knew of the then pending suit against Thompson; that he understood at the time that Thompson intended to permanently leave Alaska; that he was going into British Columbia where he would attempt to secure some business and remain. It is shown that the deed included all the property then owned by Thompson in this territory. Defendants testify that the consideration for the deed was the surrender of Thompson's note for $1,000 and $500 in cash. The note was then over a year past due; Cummings had never asked for its payment; there was no check or other documentary evidence of the $500 cash payment or that Cummings had withdrawn from his bank account prior to that date such or a greater amount.

The evidence of the value of the property conveyed is not satisfactory; that the property other than the mining claim was probably worth about $1,500. The mining claim had a purely speculative value impossible to fix.

The deed was drawn and acknowledged before Mr. Farris, then commissioner and recorder at Susitna Station. Mr.

Farris does not remember that the deed was delivered to Cummings at the time of its execution. Cummings returned to Seward, leaving Thompson at Valdez. Afterwards Thompson went outside, either to British Columbia or the States. Cummings remained at Seward during the winter of 1909–10. He did not take possession of any of the property nor visit it, although he says he heard bad reports about the way the saloon business was being run, and that his idea in buying was to get into business. This saloon was then being conducted by Thompson's former partner, Price. Cummings did not know Price, never had any accounting with him; says he wrote him once that he would go into Susitna Station in the spring. The saloon was being run under the old name of Thompson & Price and under the license to them.

Thompson returned to Susitna Station by way of Seward in February, 1910. Defendants testify that, while at Seward, on his return he bought back from Cummings the one-half interest in the saloon business for $400 cash, and rented the saloon building for $20 per month. No documentary evidence of this transaction is produced.

It has been claimed that the rent has been paid since to September, 1911, by Thompson and his successor in the saloon to Cummings. There is no documentary evidence of any of these payments. Defendants claim that the money was remitted from Susitna to Seward in cash, generally by letter, but never registered and never by check or post office order.

Thompson returned to Susitna in February, 1910, where he is still sustaining the same apparent relations to the property there as before. Cummings in April, 1910, went to Knik, which is about 35 miles from Susitna. At Knik he got employment tending bar and his wife running a roadhouse for his employer. He did not visit Susitna until 1911, when he was there for one day. He has never visited the mining claim.

April 25, 1910, plaintiff recovered judgment for $1,598.60 in his suit against Thompson and Wallace, and forwarded the transcript of the judgment for docketing to the recorder Farris at Susitna Station, where it arrived by mail May 22, 1910,

and was filed and recorded at 11:10 p. m. May 22d in that year was Sunday. At 8:30 p. m. of the same day, the deed from Thompson to Cummings was also filed for record; Thompson delivering it to the recorder for that purpose. Cummings testified that the deed was at all times in his possession, from its execution until about May 18th, when, at Knik, he gave it to a man named Beede, who was going to Susitna Station, with instructions to give it to the recorder. Thompson testified that Beede delivered it to him (Thompson) with the request that he have it recorded for Cummings. Beede was dead at the time of the trial. Thompson testifies that he retained possession as owner of the one-half of the saloon business from the time he purchased it back from Cummings until October, 1910, when he sold it, during which time he gave the mortgage to Murphy for $1,100. This suit to set aside the transfer to Cummings was brought in October, 1910.

Cummings testifies that the placer claim was worked on a three-year lease given by him in June, 1910, for 25 per cent. royalty. There is no evidence that Cummings had any representative at any time upon the ground to look after his interest in the "clean-up" or at any other time. The evidence shows that the defendant Thompson visited the claim at a time when there was trouble with other claim owners over the water used on the placer.

J. L. Reed and E. R. Ritchie, for plaintiff.
S. O. Morford and Thomas R. Shepard, for defendants.

CUSHMAN, District Judge. The questions argued by counsel have gone to the bona fides of the sale from Thompson to Cummings and the right of the plaintiff to maintain the suit in any event.

While under section 1043, Carter's Code of Alaska, the fraud presumed from want of change in possession is confined to personal property, yet in this case, where both real and personal property were transferred by one instrument, which property constituted the entire estate of the debtor, and there was no actual change of possession of any of the property un-

til long subsequent, this taken in connection with the various circumstances above pointed out is sufficient to shift the burden of evidence as to the bona fides of the sale from the plaintiff to the defendants. Many circumstances in this case may be mentioned of the class ordinarily denominated badges of fraud. Among them are close and intimate relations existing between the parties to the transaction claimed to be fraudulent; suit pending against the grantor approximately for an amount equal to the value of the property; insolvency of the grantor (the value of all his property was at the time of transfer about $1,500; his debts known to grantee other than that involved in the pending suit amounted to $2,800); unusual delay in recording conveyance; a sale of all his property of mixed character to one grantee; that at the time of purchase the property was unknown to the grantees; that it was bought without an attempt to examine or request by the grantee for time to examine; that grantee did not take possession, but that the grantor continued in possession and continued to show interest in and care for the property after the transfer; that the grantee did not exhibit ordinary interest in or attention to it after the transfer; that the instrument of transfer was left with or delivered to the grantor; that it was hurriedly recorded by the grantor at an unusual time, to wit, 8:30 Sunday night; that no vouchers or documentary evidence of any kind to support the transaction are introduced or offered; that so few of the acts of the parties to the transaction were done in the ordinary manner; that, without an examination of the property, the grantee sold back to the grantor the saloon for $400, which grantor was immediately able to mortgage for $1,100.

It is believed that these, with other unusual circumstances, warrant the conclusion that the transfer was made to Cummings to hinder, delay, and defraud Thompson's creditor, the plaintiff; that Cummings knew of the fraudulent purpose and was a party to it. He admits that immediately prior to the transfer he knew that defendant Thompson intended leaving the territory permanently. He was acquiring all of Thompson's property, and he knew Thompson owed twice as much as it was worth, outside of the claim on which suit was pending.

It is no answer to say that he did not think there would be a recovery in that suit.

Besides this admitted knowledge prior to the transfer on his part, many of the circumstances mentioned above are of a character to disclose the prior purpose. Defendants have undertaken to explain many of the unusual circumstances, but their number is too great, and the explanations do not satisfy. It is concluded that there was no valuable consideration for the transfer.

It is argued by defendants that plaintiff cannot recover because he has not brought himself into such privity with the property as to entitle him to sue to set aside the transfer, no matter how fraudulent it might be. Defendants are right to this extent; under our law there is no lien upon personal property until the actual levy of the writ of attachment or execution, which must be made by taking into custody, from which time the attaching plaintiff is deemed a purchaser in good faith for value. Sections 140, 141, pt. 4, Carter's Codes. This lien he must have before he can maintain a suit to void the transfer.

"And since a judgment does not operate as a lien upon personalty, if the creditor seeks aid in regard to the personal estate of the debtor, he must show, not only a judgment, but also an execution giving him a legal preference or lien upon the debtor's goods and chattels." 20 Cyc. p. 696, and citations, note 15.

Under the Alaskan Code, a judgment is made a general lien by statute upon all of the defendant's real estate, and a levy is not necessary to create a lien. Section 260, pt. 4, Carter's Codes.

"Under the statutes of many of the states, the lien of a judgment attaches to the real estate of a debtor when the judgment or a transcript of it is recorded or filed in the proper office of the county where the land is situated. Where this is the case, a creditor may file his bill to set aside a fraudulent conveyance as soon as he has obtained a judgment without issuing execution thereon, if the action is brought for the purpose of making his lien more available and efficient and in aid of an execution thereafter to be issued." 20 Cyc. p. 697.

"Where a creditor is required to cause execution to be issued upon his judgment before suing to set aside the conveyance, whether he must cause the execution to be actually levied upon the subject

of the conveyance will usually be found to depend upon whether a levy is necessary to create a lien. In some states the statute provides that a levy must be made to preserve the lien of the judgment, if the property sought to be reached is capable of being·levied on. But where a specific lien upon the real estate of the debtor has been acquired by the filing of a judgment or the issuance of execution thereon, and the action is brought in aid of the lien, a levy of the execution is not required. And a levy is not necessary if it would be of no practical utility." 20 Cyc. p. 698.

Subdivision 4 of section 274, pt. 4, Carter's Codes, provides:

"Property (real) shall be levied on (by execution after judgment) in like manner and with like effect as similar property is attached, as provided in sections 140, 141, and 143, omitting the filing of the certificate provided for in section 142."

From the above quotation, by comparing its provisions with sections 140 and 141, supra, it is apparent that a levy after judgment is not necessary or contemplated for the preservation of the judgment lien.

"When·the debtor has clouded the title to real property by an incumbrance or fraudulent transfer of it, the judgment creditor may proceed at once to have it removed. He obtains a lien upon the land when he recovers his judgment, and he has the right to stop there and proceed to have the title freed from its obscurity. The suit in that case is to aid his remedy at law, and he is not required even to issue an execution. 3 Pomeroy's Eq. Jur. § 1415, note 4; Mohawk Bank v. Atwater, 2 Paige (N. Y.) 54; Parshall v. Tillou, 13 How. Prac. (N. Y.) 7." Multnomah Street Ry. Co. v. Harris, 13 Or. 198, at 200, 9 Pac. 402, at 403.

"Counsel for defendant insist that plaintiffs have no standing in equity without first bringing themselves in privity with the property sought to be reached by this suit by attachment or judgment lien, but we think the authorities he cites in support of his position are inapplicable here. * * * In Fleischner v. Bank of McMinnville, 36 Or. 553, at 562, 60 Pac. 603, Mr. Justice Dean cites this case (Dawson v. Coffey, 12 Or. 513, at 519, 8 Pac. 838) with approval in support of the statement: 'It is settled that, before a creditor can maintain a bill to set aside the fraudulent conveyances of his debtor, he must either establish his claim by judgment or acquire a lien by attachment.' * * * See, also, numerous Oregon cases cited. Therefore plaintiffs have done all the law requires of them, and all that they could do by reducing their claims to judgments and having executions returned nulla bona." Williams v. Commercial Nat. Bk., 49 Or. 492, at 501, 502, 90 Pac. 1012, at 1016, 11 L. R. A. (N. S.) 857.

"The filing of the transcript of the judgment in La Plata county fastened a lien securing its payment upon the interests of the coal

and coke company in its real estate in that county, under the statutes of Colorado. * * * The argument that this lien was insufficient upon which to base a suit in equity to remove the fraudulent trust deed, because it was a general lien created under the statutes, and not a specific lien fixed by the levy of an execution, finds no support in the authorities, and fails to appeal to the reason with persuasive force. * * * In the case at bar all the property which the judgment debtor has is real estate in La Plata county. The judgment is a lien upon all this property. The levy of an execution upon it could not make this lien more specific or more efficient, and the conclusion is irresistible that the general lien upon real estate created by entering a judgment or filing a transcript of it in the county where the lands of the debtor are situated, in accordance with the statutes which provide therefor, is a sufficient basis for the maintenance of a suit in equity to remove a fraudulent obstruction to the enforcement of that lien. Bump, Fraud. Conv. 535; Black, Judgm. § 400." Schofield v. Ute Coal & Coke Co., 92 Fed. 269, at 271, 272, 34 C. C. A. 334, at 337.

"The judgments involved here are made liens by statute. They would not have been made more binding by the issuance of an execution on each of the several judgments. The defendant in judgment owned no property in his own name, subject to execution. The property on which the lien was fixed by the judgments was held, it is alleged, in secret trust for the judgment defendant. The corporation that so held it had, according to the averments of the bill, been chartered to be used as a cloak to defraud the plaintiffs. The property, with its title so incumbered, would not sell under execution for nearly its value. On these facts we hold that equity has jurisdiction without the issuance of executions on the judgments. Schofield v. Coke Co., 34 C. C. A. 34, 92 Fed. 269; McCalmont v. Lawrence, 1 Blatch. 232, Fed. Cas. No. 8676; Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004." Lazarus Jewelry Co. v. Steinhardt, 112 Fed. 614, at 618, 619, 50 C. C. A. 393, at 397.

The following cases cited by the defendant are inapplicable:

In Arnett v. Coffey, 1 Colo. App. 34, 27 Pac. 614, the judgment creditor had failed to acquire his lien by filing a transcript of it with the recorder.

In Smith v. Ingles, 2 Or. 43, the judgment debtor paid the purchase money to buy land, and took the title in his son's name. This equitable interest was held not subject to the lien of a judgment because the title never had been in the judgment debtor. The title once being in him, a void transfer will not remove it from the grasp and hold of the judgment creditor's lien and equity, where only parties to the fraud are before the court. That this was the effect of the court's rul-

ing in that case is shown by the decision of the same court referring thereto in Holmes v. Wolfard, 47 Or. 93, at 100, 81 Pac. 819.

The defendant also cites In re Estes (D. C.) 3 Fed. 134. In this case it was held that in Oregon a judgment would be no lien on property theretofore fraudulently conveyed. There were other parties equitably interested before the court in that case than the judgment debtor and the parties to the fraud. The suit there did not involve the right of such a judgment debtor to maintain a suit to void the transfer. The ruling was made on the authority of Miller v. Sherry, 69 U. S. (2 Wall.) 237, 17 L. Ed. 827. In the latter case it was not contended that the judgment was a lien, and it was held that the filing of the judgment creditor's bill itself constituted an equitable levy. It will be seen that these cases are not directly in point, and that they are not recent.

"A strong purpose is manifested in the more recent statutes and decisions of the courts to enlarge and strengthen the creditor's remedies against the property of the debtor." 20 Cyc. 341, 655, et seq.

It is argued by the defendants that, as the complaint alleges the ownership of the property and its possession at all times by the defendant Thompson, therefore there was an adequate remedy at law, and this suit will not lie. This position does not satisfy the conscience. Thompson had executed and recorded a deed purporting to convey all his property, and had mortgaged a part of it. There was no executed or recorded reconveyance to him of . the saloon business. The mortgage thereon was for more than the property was worth, and, although he says now that it has been paid, no record or knowledge on plaintiff's part of that fact is shown. Thompson was still claiming to rent the saloon building from Cummings. The plaintiff was not, under these circumstances, compelled to court lawsuits with the grantee and mortgagee of Thompson by levies and sales before bringing a suit to set aside the fraudulent conveyances.

It is therefore concluded that this suit will lie and plaintiff prevail, so far as the property fraudulently transferred may be considered real property, and that he must fail, so far as

it is personal, for want of a lien thereon before bringing suit and because parties not before the court are shown to have acquired it.

The pleadings and the deed offered in evidence by the defendants describe the property as:

"That certain placer mining claim known as the Battle Axe, located on Thunder creek, a tributary of Cache creek, in Cook Inlet mining and recording precinct. An undivided one-half interest in and to that certain saloon situated in the town of Susitna, Alaska, known as Thompson & Price's saloon, together with and including all fixtures, cigar and liquor license, and the lot or parcel of land whereon said saloon is situated. That certain log house adjacent to John Jones' bathhouse, and lying between said bathhouse and the general merchandise store of H. W. Nagley, in said Susitna, together with all fixtures and chattels therein contained, owned by said first party, and also that certain log cabin situated in the rear of said log house, with all chattels or other property therein contained."

The foregoing is all that is shown as to the character of title or property. That which in the conveyance defendants have treated as real estate, the mining claim, the saloon building and lot, will be held to be so, and that which is treated as personal property (that is, the saloon, stock, cigar business, license, the log house adjacent to the bathhouse, together with the chattels therein and the log cabin situated in the rear) will be held to be so. If these two buildings were upon public land, which, in the absence of all evidence, will be presumed, there would be an implied license to remove, and they would be personal property.

The prayer of the plaintiff in his amended complaint is granted, except as to this personal property. Plaintiff will be allowed an attorney's fee of $250.