HUFF et al. v. BIDWELL et

(Circuit Court of Appeals, Fifth Circuit. April 9, 1912.)

No. 2,288.

CREDITORS' SUIT (§ 59*)—SOLICITOR'S FEES—ALLOWANCE.

Where a judgment lien creditor sues in equity for the benefit of himself and all intervening creditors, and obtains decree for complainant and such creditors, and the defendant's property condemned and sold to satisfy debts exceeds the amount of debts and interest and costs, the complainant is not entitled to an allowance for his solicitor's fees out of the surplus otherwise payable to the debtor after full payment of all the debts and costs.

[Ed. Note.—For other cases, see Creditors' Suit, Cent. Dig. §§ 218–221; Dec. Dig. § 59.*]

Pardee, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern District of Georgia.

Creditors' bill by William L. Bidwell and another against W. A. Huff and others. From a decree allowing solicitor's fees, defendants appeal. Reversed and remanded.

See, also, 180 Fed. 374, 103 C. C. A. 520.

Du Pont Guerry and Thos. S. Felder, for appellants.

Alexander Akerman and J. E. Hall (Hall & Hall and Akerman & Akerman, on the brief), for appellees.

Before PARDEE and SHELBY, Circuit Judges, and MAXEY, District Judge.

SHELBY, Circuit Judge. This litigation was begun by a creditors' bill brought by William L. Bidwell and Franklin E. Woodford against W. A. Huff and others. The complainants were judgment lien creditors and filed their bill on behalf of themselves and other creditors. The facts are more fully stated in a report of a former appeal in this case. Huff et al. v. Bidwell et al., 151 Fed. 563, 81 C. C. A. 43. Numerous creditors, some of them judgment creditors and some of them mortgagees, intervened and propounded their claims. The property of the defendant Huff was sold by decree of the court and the proceeds brought into court. Although it was alleged that the debtor Huff was insolvent, it appears that, pending the litigation, his property increased in value, and that the sales have realized a sum greatly in excess of his debts. It is asserted at the bar, and not denied, that the excess in court after paying the costs and all debts, principal and interest, will be more than $10,000.

The present controversy relates to a claim for an allowance for fees for the solicitors for the complainants. The complainants were represented in the litigation by Messrs. Hall & Wimberly, who filed in the court below a petition praying that the court allow them out of the fund in court reasonable compensation as solicitors for the complainant. After stating the services performed by them, it is averred in their petition that a sufficient fund "has been realized, not only

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to pay the original complainants, and all of the creditors who have intervened in said cause, but to leave a substantial surplus for respondents." W. A. Huff and his children, who would be entitled to the surplus, answered the petition with general denials, and with the special averment that:

"If any counsel fees are allowable to the petitioners at all, it is not proper that the same should be paid out of this overplus, which should be returned to these defendants; but if such counsel fees are payable at all, they should be paid by such contribution from the several creditors as to the court may seem equitable and just, but in no event should the sum be taxed against the fund belonging to these defendants, or either of them."

This petition was referred to the master in chancery, who reported his conclusion "that $10,000 approximately should be allowed the solicitors for complainants," and that the same should be paid out of the surplus after paying all the proved debts, principal and interest. The report of the master was affirmed by the Circuit Court, and from that decree this appeal is taken.

The rule is well settled in its application to creditors' suits that, where a creditor recovers by suit a fund for the benefit of all the creditors, he is entitled to have his solicitor's fees paid out of the fund realized or pro rata by the creditors.

"Having come in and proved their claims, and obtained the benefit of the suit which was instituted on their behalf, as well as that of the plaintiff, it cannot be just that in such a suit—a suit instituted for the benefit of all the creditors—one alone should bear the burden, when others have the benefit." Thompson v. Cooper, 2 Col. C. C. 87, quoted in Trustees v. Greenough, 105 U. S. 527, at page 533 (26 L. Ed. 1157).

In creditors' suits, the underlying principle upon which those who do not appear as plaintiffs are charged with a proportionate part of the solicitors' fees is that the plaintiffs represented, and were suing for, the others; and this agency is generally shown by the appearance of the other creditors in court propounding their claims and claiming to share in the result of the suit. Lamar v. Hall & Wimberly, 129 Fed. 79, 83, 63 C. C. A. 521; Farmers' Loan & Trust Company v. Green, 79 Fed. 222, 24 C. C. A. 506; Hand v. Railroad Company, 21 S. C. 162. But the plaintiff in this case in no sense represented Huff, the defendant. The suit was not brought for his benefit. There was no just reason for seizing more of his property than would pay his debts, principal and interest, and the costs of suit. The property having been sold for a sum in excess, the proceeds necessarily came into court; but it was never the purpose of the suit to accomplish more than the collection of the debts and costs. If no creditors had intervened, if the suit had been brought by the plaintiffs to enforce and collect their judgments only, is there any known principle upon which Huff could have been made responsible for the plaintiffs' solicitor's fees? The intervening of the creditors may in such cases oblige them to contribute to the payment of the fee; but such interventions impose no obligation on the defendant who is sued. On principle, it seems to us that this fee cannot be added to Huff's indebtedness.

It is seldom that a surplus is found in creditors' suits, and precedents in point are therefore scarce. In Stanton v. Hatfield, 1 Keen, 358, which was a creditors' suit, there was a surplus; "the assets being more than sufficient to pay the debts." The court held that the plaintiff was entitled only to his taxed costs out of the assets. And in Virginia, where the usual rule prevails that creditors who intervene in creditors' suits and derive a benefit must contribute to the payment of the plaintiff's solicitor's fees, it is expressly held that:

"This contribution must come from the creditors. The debtor cannot be charged with it." Ger. Nat. Ins. Co. v. Va. State Ins. Co., 108 Va. 393, 399, 61 S. E. 870.

This same view had been previously announced in Roller v. Paul, 106 Va. 214, 219, 55 S. E. 558, 560, where the court observed, referring to the creditors:

"When their claims were satisfied, they had secured from their debtor's property all that they were entitled to."

In Bank of Charlottesville v. Manoni, 76 Va. 802, 808, the same court said that:

"If it be proper that the counsel representing the creditors should have an allowance beyond the legal fee for their services, the creditors should pay it."

The reasons upon which complainants' solicitors found their claim do not appear to us to be sound. It is claimed that the litigation was of benefit to Huff, which he stoutly denies; but, if it were true, the fact that he was incidentally benefited is no reason for charging him with the fees of the solicitors who sued him. Conceding that Huff's failure to pay his debts caused the litigation, that is no reason for charging him with the fees unless he directly or indirectly contracted to pay them. The usual rule that each party is to pay his own attorney is the safe rule.

"When both client and counsel know that the fees are to be paid by the other party, there is danger of abuse." Oelrichs v. Spain, 15 Wall. 211, 231 (21 L. Ed. 43).

The claim that the complainant has "created a fund and brought it into court" is not controlling on the question presented by this record. There existed no reason or legal right to create at Huff's expense a larger fund than enough to pay his debts and the costs. If it could have been known in advance that the property as advertised would produce a surplus and it had been capable of a suitable division to avoid that result, only enough of it should have been sold to pay the debts and the costs. There would have been no authority to sell more of it for the purpose of paying the fees of complainants' solicitors.

In the present condition of the record, we cannot do more than decide the question we have discussed. Whether some or all of the creditors are liable to contribute to the payment of the fees of the complainants' solicitors is a question that was not considered or decided by the Circuit Court. The creditors filed no answer to the solicitors' petition. The contest was entirely between Huff and others, who were entitled to the surplus, and the petitioners. The case was

tried as if the creditors had no interest in it, and in fact they did not, under the ruling that the fee allowed was to be entirely paid out of the surplus belonging to Huff and that no part of it was to be paid by the creditors.

The decree affirming the report of the master in chancery is reversed, and the case remanded.

PARDEE, Circuit Judge (dissenting). Huff was insolvent at the time the bill was filed August, 1899, and his visible property was so incumbered with tax levies and sales on state, county, and city taxes in default from 1891, and on assessment for paving liens due to the city of Macon, and was otherwise covered by mortgage and judgment liens, that no lien creditor had a remedy by execution nor by foreclosure of lien without involving himself with prior or subsequent liens; and no ordinary creditor had a plain and direct remedy by judgment and execution.

After filing the bill, the court against the opposition of Huff appointed a receiver of all Huff's property, and the court thereafter on hearing decreed Huff insolvent and ordered a sale of all his property. marshaling the liens thereon and canceling some 13 deeds based on tax sales, and the decree on the appeal of Huff was affirmed in this court. The execution of the decree was so opposed by Huff that the case was again brought before this court and the proceedings below affirmed. 176 Fed. 1022, 100 C. C. A. 666, and see 180 Fed. 374, 103 C. C. A. 520. In all the proceedings Bidwell and Woodford acted in the capacity of trustees for all the creditors (all of whom intervened during the progress of the suit), and through their solicitors managed and conducted the litigation, which resulted in bringing the fund into court to the direct advantage of Huff, in that all his debts will be paid and a large surplus left to him. The only benefit the creditors can or will receive will be the payment of Huff's just obligations, and no more.

"It is the general rule of equity that a trustee called upon to discharge any duties in the administering of his trust is entitled to compensation therefor, and included therein is a reasonable allowance for counsel fees. This is constantly enforced in the federal courts in the various railroad foreclosures that have been and are proceeding therein; and this irrespective of any state legislation. The subject was exhaustively considered by Mr. Justice Bradley, in the case of Trustees v. Greenough, 105 U. S. 527 [26 L. Ed. 1157]. The English and American authorities were fully reviewed, and the power and duty of the court to make reasonable allowances (including counsel fees) to trustees or others acting in that capacity was affirmed." Dodge v. Tulleys, 144 U. S. 451, 457, 12 Sup. Ct. 728, 731 (36 L. Ed. 501).

And in that case counsel fees were allowed as against the judgment debtor, defendant in the case, who, like Huff, seems to have fought the case from start to finish.

At this time, I do not care to discuss the principles and practice involved, or even to review the cases cited in the opinion of the court, further than to say that all allowances made in courts of equity to trustees eo nomine and to others acting as such for expenses and compensation to counsel in the foreclosure of trust deeds, mortgages, and other liens, or in the prosecution of creditors' bills, are in

theory, and in some well-managed cases in practice, at the expense of the delinquent nonpaying debtor; for unless the fund brought into court is sufficient to pay all costs and allowances taxed as costs and pay in full the obligations in suit, the obligations are not extinguished, and if the proceedings are properly conducted, the unpaid creditors under our equity rule 92 may have a deficiency execution or may further proceed at law or in equity to collect the unpaid balance of their adjudged claims.

In my opinion, following the usual practice, an allowance should be made from the fund in court for counsel fees to the acting trustees.