Mr. Justice DAVIS.
 

 F. P. James, Isaac Seymour, and N. A. Cowdrey ask leave to intervene in this cause, and to dismiss the appeal, and predicate their motion on two affidavits of F. P. James.
 

 The first affidavit states substantially that on .the 81st of December, 1856, the La Crosse and Milwaukie Railroad Company executed a mortgage on the western division of their road, lying between Portage and La Crosse, to Greene C. Bronson, James A. Soutter, and Shepard Knapp, as trustees, to secure certain bonds, which mortgage was afterwards foreclosed in the District Court of Wisconsin, and the mortgaged property sold, and purchased by the parties asking to intervene; that the same Railroad Company, on the 17th day of August, 1857, executed anotheT
 
 *526
 
 mortgage to these complainants, Bronson and Soutter, on the eastern division of their road, lying between Portage and Milwaukee, to secure certain other bonds; that suit was also brought' on said mortage in the District. Court, of Wisconsin, where a decree was passed on the 13th day of January, 1862, for one-half of the face of the bonds, from which decree an appeal was taken by Bronson and Soutter to this Court; and that the parties to the suit have entered into fraudulent stipulations to reform the decree rendered below, so that the bonds will be paid in full, and that James Cowdrey and Seymour, as purchasers under the first mortgage, willJbe injured if the decree is thus reformed.
 

 The second affidavit states that Nathaniel S. Bouton, on the 5th day of April, 1859, recovered a judgment in the same District Court for upwards of $7,000 against the La Crosse and Milwaukie Railroad Company, which judgment was assigned to F. P James & Co., and was a lien when this suit was instituted, and that neither Bouton nor his assignees were notified of the pendency of these proceedings; that, there were issued under the mortgage of. Deomber 31st, 18.56, bonds to the nominal or par value of $4,000,000, the greater portion of which are held by James and his associates in their own right or in trust for others, and that they have by the advice of counsel determined to abandon their purchase and ask for a re-salc of the whole property mortgaged by the deed of December 31st, 1856.
 

 Have James, Seymour, and Cowdrey, a right to intervene in this cause, to make a motion to dismiss this appeal, or for any other purpose ? The La Crosse and Milwaukee Railroad is a corporation created by the laws of Wisconsin to build a. continuous line of railroad from the City of Milwaukie, on Lake Michigan, to La Crosse on the Mississippi River. Power was given to the Company to mortgage separate portions of their, road, and in execution of that power the mortgage of December 81st. 1856, on the western division, and the mortgage of August 17th, 1857, on the eastern division were given. These mortgages were executed to secure specific liens on different parts,of the road, and the bondholders evidently relied on these liens alone
 
 *527
 
 for their security. Separate suits were brought at different times to foreclose these mortgages,' and the parties in one suit were not necessarily parties in the other. The right to intervene as made by the first affidavit rests solely on the ground that James and his associates were purchasers of the western division of the road, which, as they insist, included " the personal property, machinery, rolling stock, franchises, rights, and privileges of the entire road.”
 

 This Court cannot in this suit decide whether the construction contended for by these parties as to the extent of their purchase is correct or not. Under the pleadings, no question is or could have been raised as to what property is covered by the mortgage deed. The controversy in the Court below was whether there should be a decree
 
 nisi
 
 .for any amount, and if so how much. The Court in fixing the amount due on the mortgage, estimated the bonds not at par, but at the rate of fifty cents on the dollar, and decreed accordingly, and the complainants below appealed. It is not perceived
 
 how
 
 the stipulation to reform the decree can affect the
 
 right
 
 of James & Co., to the claim which they advance. If under their purchase they take the rolling stock and franchises of the whole road, what concern is it to them whether the decree is for $500,000, or $1,000,000 ?
 

 Such a
 
 right
 
 is surely not dependent on the amount of the decree. But it is claimed, in the second affidavit, that Bouton, a judgment creditor, having lien, and uecessarilly a party, had no notice of the pendency of this suit. The answer to this statement is, that the record informs us (p. 297) that Bouton did appear by attorney, and consented that a decree might be rendered pursuant to the prayer in the bill.
 

 One other ground remains on which the right to intervene is placed — that of general creditors. James and his associates, owning a large portion of the bonds secured by the lien of the first mortgage, insist that the mortgage is an insufficient security, and that they are, therefore, interested* in lessening the amount of the decree to be rendered in this cause. Every creditor is, of course, concerned that his debtor should reduce his obligations. The less the debtor owes the greater his ability to pay.
 

 
 *528
 

 Mr. Carpenter,
 
 of Wisconsin, in ‘support of the motion.
 

 Mr. Swing
 
 and
 
 Mr. Carlisle,
 
 contra.
 

 But was it ever seriously maintained that a general creditor, having no specific lien, had a right to interfere in the contests between his debtor and third parties ? If the general creditors of a mortgagor are suffered to intervene in an appellate tribunal, this Court would become the triers of questions of fact outside of the record, and that too on
 
 ex parte
 
 affidavits — by no means the best mode of ascertaining truth.
 

 If the right was conceded to one creditor it would have to be to another, and where the creditors are numerous, as in the case of railroad bondholders, the exercise of the right would lead to great embarrassment.
 

 If, as is charged, the parties to this suit have made agreements in fraud of the law, or rights of third persons, the Circuit Court of Wisconsin can give relief in a suit instituted there for that purpose, where testimony can be taken, and the valuable right of cross-examination at the same time preserved. In any case— where it is apprehended that the parties to the record seek to dispose of it by stipulations fraudulently made, and which will affect injuriously the rights of others — the Court will respectfully hear and consider
 
 suggestions,
 
 and will endeavor to protect itself from imposition, and prevent the wrong that is contemplated.
 

 But the Court cannot lay down any general rule of practice by which it will be governed, for each case must depend on its own circumstances.
 

 The motion is overruled.
 

 At a subsequent day of the term a motion was made by one of the persons who was a joint defendant with the La Crosse and Milwaukie Railroad Company, to dismiss the appeal on the ground that the decree of the Court below was not final.
 

 Mr. Justice DAVIS.
 

 This case is again before us. A motion
 
 *529
 
 is now made by one of tbe defendants to dismiss the appeal, because there was no final decree in the meaning of the Act of Congress which authorizes this Court to exercise appellate jurisdiction only by appeal, or writ of error from a
 
 final
 
 judg ment or decree.
 

 This is a suit in equity brought by Bronson & Soutter in the District Court of Wisconsin to foreclose a second mortgage, given by the La Crosse and Milwaukie Railroad Company, to secure a large - issue of bonds. The company being in arrears for interest, Bronson & Soutter sought the aid of a Court of Equity to enforce their trust.- Numerous- persons were made defendants, who had, or were supposed to have liens, and the record, which has swelled to a printed volume of six hundred pages, shows the litigation to have been protracted and bitteThe bill was filed on the 9th day of December, 1859. A pa ■ of the defendants answered, which answers were replied to, an' a
 
 pro confesso
 
 decree was taken as to those who did not answei and the cause came on for final hearing on the 13th day c1 January, 1862. The Court judicially ascertained that there
 
 ws\
 
 owing to the complainants, on the security of their- mortgag ■, the sum of $500,000 for principal, and $65,260.05 for interest, and decreed-that the mortgaged premises should be sold at publ:c auction by the marshal, unless the amount found due for arrea] s of interest, with taxed costs, should be paid before the day cf sale. The equity of redemption was foreclosed, and it was ordered, if a sale should be made, that the purchaser should have possession, and that those who had control of the road should surrender the possession on production of the deed from the marshal with a certified copy of the order confirming the sale. It was also decreed, if the interest and costs were paid, that further proceedings should be staid until some future default should be made in the payment of interest, when, on petition, tbe Court would found another order for a salé.
 

 The litigation between Bronson & Soutter and the defendants, on any matter in which there was a joint interest, is closed by this decree. The object of the suit was to ascertain how much money was due on the security of the mortgage and .to sell the
 
 *530
 
 property unless tbe amount was paid. The Court did find what was due, and ordered a sale. The very purpose of the litigation, which was initiated by Bronson & Soutter, was accomplished and nothing remained for them to do, if they felt aggrieved by the finding of the Court, but to appeal. Their right of appeal attached on the rendition of the decree, and the time limited in which an appeal could be taken began to run from the date of the decree. It is said that some exceptions to the report of the master were pending and undetermined when this decree was made; but those exceptions did not relate to any claim of Bronson & Soutter; they were collateral to the main purpose of the suit, and concerned the defendants alone.
 

 If Bronson & Soutter should have to sit quietly by until the equities of the different lien creditors of the La Crosse & Milwaukie Railroad Company- — with which they have no concern— are determined, they might be ruined before they could avail themselves of their right of appeal. Bronson & Soutter insist that there is due them, as trustees, on this mortgage, $1,000,000, with large arrears of interest, which claim was reduced one-half by the. Court below.
 

 The La Crosse & Milwau' cie Railroad Company is evidently greatly embarrassed, and the property mortgaged is doubtless the only security relied on by the trustees for payment.
 

 Now, if the Court had the right to make the decree and ordei the sale — of which there can be no question — and the right of appeal is in abeyance until the sale is perfected, and the different collateral equities between the Railroad Company and other parties are settled, great mischief might ensue.
 

 If this Court
 
 should
 
 find that Bronson & Soutter are entitled to their whole claim, and in the meantime the property is sold and out of their control, how would their success benefit them ? It would be a victory barren of results. If the decree was reversed there could be no restitution of the road, its property and franchises; for purchasers at a judicial sale are protected.
 

 A rule, from which consequences- so injurious to the rights of parties litigant would necessarily result, has never received the sanction of this Court
 

 
 *531
 
 This decree is not final, in the strict, technical sense of the word, for something yet remains for the Court below to do. But, as was said by Chief Justice Taney, in
 
 Forgay et al.
 
 vs.
 
 Conrad,
 
 (6 How., 203), “ this Court has not therefore understood the words ‘ final decrees,’ in this strict and technical sense, but has given to them a more liberal, and, as we think, a more reasonable construction, and one more consonant to the intention of the Legislature.”
 

 In the case of
 
 Ray
 
 vs.
 
 Law,
 
 (3 Cranch, 179), and
 
 Whiting
 
 vs.
 
 The Bank of the United States,
 
 (13 Wheaton, 15), this Court has decided that a decree for the sale of mortgaged premises is a final decree from which an appeal lies. The Court rested their decision on the- ground that when the mortgage was foreclosed and a sale ordered, the merits of the controversy were finally settled, and the subsequent proceedings were simply a means of executing the decree.
 

 But, in denial of the right of appeal, it is said that a cross bill filed by leave of the Court is undetermined. This cause was heard and determined on the pleadings then existing, and no cross bill was pending, although the litigation had been protracted beyond two years. It is true that the Court, on the 7th day of January, 1862, and before tbe decree was passed, gave leave to the “ defendants, Sebre, Howard, Graham, and Scott, the Milwaukie & Minnesota Railroad Company, and any other defendants who have liens subsequent to those claimed by Selah . Chamberlain, to file a cross bill against said Chamberlain, contesting the liens under the lease or assignment, or judgment claimed by him 'in his answer — provided said cross bill should .be filed by the 1st of February, 1862.”
 

 The bill was filed on the 1st of February, after the decree of foreclosure was made and sale of the premises was ordered, and Bronson & Soutter were made parties, although there was no order of the Court permitting it to be done, and process was regularly issued and served on them.
 

 It is an independent proceeding, instituted by certain lien creditors of the road, who were defendants in the original suit, seeking to invalidate a prior lien set up by Chamberlain, auott er
 
 *532
 
 defendant, in bis answer. It can affect in no wise tbe right of Bronson & Soutter to foreclose tbeir mortgage, and bas no bearing on tbe legitimate questions presented for the consideration of tbe Court in tbe bill filed by them for that purpose. Such must have been tbe view entertained by tbe Judge of the District Court, for we cannot suppose that be intended to embarrass tbe parties to tbe original suit, after it was ended, by allowing tbe defendants to that suit to litigate tbeir own claims to tbe 'injury of tbe original complainants^ It is proper to say, that we - do not approve of tbe practice of filing a cross bill after tbe original suit bas been beard and its merits passed on. If any of tbe defendants in this suit wished to have tbe equities between themselves settled without instituting an original suit for that purpose, they should have applied to the Court at an earlier stage of tbe litigation, and not waited until tbe pleadings were perfected, proofs taken, and tbe cause, after two years of delay ready for bearing.
 

 Tbe motion is overruled.