**ALLEBACH et al. v. THOMAS (two cases).**

**In re NICHOLSON.**

(Circuit Court of Appeals, Fourth Circuit. January 11, 1927.)

Nos. 2566, 2568.

1. **Bankruptcy ⬉213—Sale of bankrupt's property subject to deed of trust is discretionary with bankruptcy court.**

Sale of bankrupt's property subject to deed of trust is entirely within discretion of bankruptcy court.

2. **Bankruptcy ⬉217(1)—Sale under deed of trust may be enjoined.**

Sales by trustees in deed of trust may be enjoined, pending determination of bankrupt's equity in property.

3. **Constitutional law ⬉169—Remedy of trustee in deed of trust may be altered in bankruptcy court, without impairing obligation of contract.**

Remedy of foreclosing deed of trust may be altered by bankruptcy court, without impairing the obligation of the contract, so long as an equally adequate remedy is afforded.

Appeal from the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

On Petition to Superintend and Revise, in Matter of Law, Proceedings of the District Court of the United States for the Southern District of West Virginia, at Charleston, in Bankruptcy; George W. McClintic, Judge.

Two separate actions by Leroy Allebach and another, as trustees under deeds of trust, against S. B. Thomas, trustee in bankruptcy of Hugh G. Nicholson; both cases being heard together. From the orders entered therein, plaintiffs appeal in one case, and in one case petition to superintend and revise. Affirmed, and petition to superintend and revise dismissed.

R. Kemp Morton, of Charleston, W. Va. (R. G. Kelly, of Charleston, W. Va., on the brief), for appellants and petitioners.

Ben Moore, of Charleston, W. Va., for appellee and respondent.

Before WADDILL and ROSE, Circuit Judges, and WATKINS, District Judge.

WADDILL, Circuit Judge. These two cases were heard together in the District Court and will be disposed of in a single opinion here. They arise in the administration of the estate of Hugh G. Nicholson, bankrupt —the first named being an appeal from the order of the District Court enjoining and perpetuating an injunction theretofore granted by the referee in bankruptcy to prevent the sale of certain real estate in the decree mentioned; and the second case is a petition to review and superintend and revise in matter of law the action of the District Court complained of.

Both proceedings were inaugurated jointly by the trustees named in certain deeds of trust executed by the bankrupt prior to his bankruptcy. The assignments of error complained of are as follows:

"(1) The United States District Court for the Southern District of West Virginia, erred in refusing to vacate, set aside, and hold for naught the injunction order entered by Houston G. Young, referee, ex parte on April 23, 1926, for the reason that under the law of the

state of West Virginia the lien of the two trust deeds set up in the petition of Allebach and Mohler, trustees, was bona fide and not preferential, and under the law of the state of West Virginia said trustees and their cestui que trust were entitled to their remedy by foreclosure by notice of sale, which notice was published before the petition in bankruptcy was filed, and matured before a trustee for said bankrupt was elected, and for the further reason that, under section 67d of the Bankruptcy Act, said lien of said trust deed and the remedy for the foreclosure of same are fixed rights, in no manner affected or avoided by the filing of a petition in bankruptcy by H. G. Nicholson, and the adjudication that he was bankrupt, for the reason that said order was entered ex parte, and without notice or opportunity to be heard to Allebach and Mohler, trustees."

From the specification of error it appears that the appellant's case is predicated on the fact that (a) the referee in bankruptcy could not grant an ex parte injunction without notice; (b) that under the deeds of trust, in which appellants were named as trustees, the beneficiaries whose debts were bona fide, and not preferential, were entitled under the laws of West Virginia to a remedy by foreclosure by mere notice of sale; (c) and that in advance of the bankruptcy proceedings, having given notice of the proposed sales under the deeds of trust, they were entitled to that remedy, which was a fixed right, and in no manner affected or to be avoided by the bankruptcy proceedings.

As viewed by the court, none of these positions taken by the appellants is meritorious. On the contrary, they are wholly at variance with the provisions of the Bankruptcy Act, and the methods of disposition of property thereunder, in the due administration of bankrupts' estates.

[1, 2] The facts are briefly these: The bankrupt was the owner of two pieces of real estate, referred to as the Raviana property and the Bradford street property, each located in the city of Charleston, W. Va. That upon the first piece of property there was a deed of trust dated 2d day of November, 1923, given to secure $8,000, evidenced by 29 semiannual installments of $240 each, beginning September 1, 1924, the final payment to be March 1, 1939, with interest from date. It was provided, after default in payment of any installment of any one note, or any installment of interest, that the entire debt should become due. That at the time of the proposed sale there had been default in the payment of two notes of $240 each, due September 1, 1925, and 1st of March, 1926. Upon the Bradford street property there was a deed of trust, dated 11th of October, 1923, to secure an indebtedness of $6,000, payable in 29 semiannual payments of $180 each, beginning with the 1st day of September, 1924, and ending with March 1, 1939, and providing that, upon default in the payment of any installment, the entire indebtedness became due, and that at the time of the proposed sale there was default in the payment of two notes, of $180 each, dated respectively September 1, 1925, and March 1, 1926. That several days prior to the time of the proposed sale under the deeds of trust aforesaid, the bankruptcy proceedings having been inaugurated, certain creditors of the bankrupt filed their petitions in the bankruptcy proceedings, asking that the sales be enjoined, averring, among other things, that they would result in a sacrifice of the property. Subsequently, the adjudication in bankruptcy having been made and a trustee in bankruptcy duly chosen, he filed his petition, joining in the request to enjoin the sales of the property.

The question of the precise amounts due is not entirely clear from the record, but it is true that appellants, on the one hand, insist that there is no equity over and above the amounts of the liens on the property; whereas, other creditors, and the bankrupt's trustee, insist that there is a large equity, certainly in one of the parcels of land. Appellants aver that, in anticipation of the sale, they made diligent endeavor to find purchasers for the properties by private inquiry, and had assurances from prospective bidders that bona fide bids would be made by solvent and responsible parties at the sale, in an amount sufficient to pay the liens of approximately $15,000 for the Riviana lot and $16,000 for the Bradford street lot, which represented the fair market values of the properties. On the other hand, petitioning creditors and the trustee in bankruptcy claimed that the properties were worth $48,000. These differences in views as to the values of the properties of the bankrupt are not uncommon, and arise most frequently at the very juncture, and between the same parties as here, viz. those who represent special creditors or lienors, on the one hand, and the general creditors, or the trustee in bankruptcy, who speaks for general creditors and the bankrupt, on the other, and show in many instances, as in this one, why the injunctive relief asked for and afforded is the safer and wiser course to adopt. Of course, absolute certainty as to values at this stage and as to the outcome, cannot be forecast, as it depends upon many considera-

tions; but the method affords reasonable time and full opportunity to those in interest to be heard.

Just to whom shall be delegated the power to sell the property depends upon many considerations. Preferentially, as between the bankrupt's trustee and the trustees in the deeds of trust executed by the debtor in advance of the bankruptcy, where an equity is believed to exist, the choice would be with the bankrupt's trustee, as he is assumed to be impartial, and representative of the bankrupt, lienors, and creditors alike; whereas, the trustees in deeds of trust are alone interested in the protection of the beneficiaries named in their several liens. This entire subject, however, is one solely within the discretion of the bankruptcy court, and it may adopt one of several courses in disposing of the property, best suited to the circumstances of the particular situation, and which it is believed will yield for those interested the best results.

[3] The theory of the appellants and petitioners for review is that they have been deprived by the action of the court of some contractual right in respect to their debts, and the security taken for payment of the same. This, however, is an entire misconception of the effect of the Bankruptcy Law, which in plain terms provides that the bankruptcy proceedings shall not affect the validity of the lien; but it nowhere says that this fact shall in any manner affect the remedy to enforce the lienor's rights. The remedy may be altered, without impairing the obligations of the contract, so long as an equally adequate remedy is afforded.

This has been the almost universally accepted interpretation of the Bankruptcy Act since its passage, and it will only be necessary to review one or two of the leading and especially instructive decisions on the subject. An early case was In re Jersey Island Packing Co. (C. C. A.) 138 F. 625, 2 L. R. A. (N. S.) 560, a decision of the Circuit Court of Appeals for the Ninth Circuit, in which the court, speaking through its presiding officer, Judge Gilbert, at page 627, said:

"The trustee in bankruptcy has the election to refuse to take possession of mortgaged property, if its value, over and above the incumbrance, is not sufficient to justify an attempt to administer it. It is true that the bankruptcy act provides that liens such as the lienholders had under the trust deeds in this case shall not be affected by bankruptcy, but that is far from saying that such lienholders may, after the commencement of proceedings in bankruptcy against the debtor, proceed to enforce their liens or contracts in the manner prescribed in the instruments which create them; and this is true whether such lien is an ordinary mortgage or a deed of trust with provision for a strict foreclosure by a notice and sale. The provision of the Bankruptcy Act that such a lien shall not be affected by the bankruptcy proceedings has reference only to the validity of the lienholder's contract. It does not have reference to his remedy to enforce his right. The remedy may be altered without impairing the obligation of his contract, so long as an equally efficient and adequate remedy is substituted. Every one who takes a mortgage, or deed of trust intended as a mortgage, takes it subject to the contingency that proceedings in bankruptcy against his mortgagor may deprive him of the specific remedy which is provided for in his contract."

In re Hasie, 206 F. 789, a decision of Judge Meeks, of the Northern District of Texas, at Dallas, will be found a full and comprehensive review of the entire subject, with the authorities bearing thereon, and the still later case of In re North Star Ice & Coal Co., 252 F. 301, a decision by District Judge (now Mr. Justice Sanford of the Supreme Court) will also be found an able discussion of the subject.

Considering who should make sale of the bankrupt's property, this court, in a comparatively recent case said:

"The order of the court below directing a sale of the property clear of all liens, claims, and incumbrances was, under the circumstances, a wise exercise of judicial discretion, being such action as the bankrupt act contemplates and provides for in those instances where the nature and location of the property makes it desirable, in the interest of the creditors, that the same be sold as soon as practicable. The act does not require that such sales shall be made by the trustee in bankruptcy, and while ordinarily it will likely be best and more convenient that such official conduct such sales, still there are doubtless many cases in bankruptcy where it is entirely proper for the court to exercise its undoubted right to designate the officer it wishes to conduct the sale it is authorizing; such designation being other than the trustee. There is nothing in the record before us indicating that the court below, in appointing its commissioners of sale, exercised its discretion improvidently, thereby militating against the interests of either the bankrupt or the creditors. This contention is without merit." President Goff, speaking for the court at page 3, in Sturgiss v. Corbin, 141 F. 1.

This would seem to be conclusive of the

subject as far as the courts of this circuit are concerned. The decision on No. 2566 will be affirmed, and No. 2568 will be dismissed; appellants and petitioners to pay costs in each case.

Case No. 2566, affirmed.

Case No. 2568, dismissed.