### In re CASAUDOUMECQ.

No. 33390–RJ.

District Court, S. D. California,
Central Division.

June 8, 1942.

Mark Watterson, of San Bernardino, Cal., for debtor.

Sarau & Thompson by H. L. Thompson, all of Riverside, Cal., for Citizens Nat. Trust & Savings Bank of Riverside.

Kelley & Hews, by Loyal C. Kelley, all of Riverside, Cal., for E. Kenneth Wood.

JENNEY, District Judge.

The farmer-debtor filed his petition on January 6, 1939, under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. Thereupon an order was made approving the petition and referring further proceedings to W. K. Lewis, at Riverside, who was then a Conciliation Commissioner. Thereafter Lewis was succeeded as commissioner by John G. Gabbert. In February, 1940, Gabbert resigned generally as Commissioner, but continued to act as such in this case.

When the bankruptcy commenced, the Los Angeles Production Credit Association was the owner and holder of a chattel mortgage covering sheep and other personal property of the debtor. The face amount due upon the principal of the obligation was $11,335. After the bankruptcy commenced, the principal amount was reduced, by mutual consent, to $6,750. Later, a friend of the debtor, E. Kenneth Wood, and the debtor, made an arrangement with the Citizens' National Trust & Savings Bank of Riverside, whereby the bank loaned $7,750 to Wood upon his note, so that the $6,750 could be paid to the Los Angeles Production Credit Association, and the further sum of $1,000 would be avail-

able to pay Wood for his services, for legal expenses involved, and for the use of Wood's credit at the bank. The Los Angeles Production Credit Association was paid the $6,750 and the chattel mortgage was transferred by it to the bank. The $1,000 was paid by the bank to Wood.

On December 7, 1939, the court approved an amended composition and extension proposal presented by the debtor, pursuant to the provisions of subdivisions a–r of Section 75, and the General Orders in Bankruptcy, 11 U.S.C.A. following section 53. On March 20, 1942, the bank filed with the court its "petition for leave to enforce chattel mortgage". This petition was opposed by counsel for the debtor. A hearing was held before the court on March 23, 1942. At that time a minute order was entered permitting the foreclosure of the mortgage, upon certain conditions, the principal one of which was this: "Petitioner may enforce its rights under the chattel mortgage through all proper and legal means approved by the Conciliation Commissioner in any court, either federal, or state, or otherwise. No sale shall be made at a price below that approved by the Commissioner."

On March 27, 1942, pursuant to a petition filed with him by the bank for that purpose, the Commissioner made an order permitting the bank to take possession of the sheep; and the bank thereupon immediately took such possession. On April 20, 1942, the bank filed with the Commissioner its "petition for leave to sell personal property under chattel mortgage". This petition was heard before the Commissioner on April 24 and 29, 1942. It covered the sheep and certain other property, all of which was subject to the mortgage. The gravamen of the petition was that the debtor had defaulted in carrying out his obligations under the confirmed composition and extension proposal; that the sheep were in bad condition owing to the lack of proper care and attention by the debtor; that they were of a perishable nature not only in a physical sense, but also in the sense that they were deteriorating in value by reason of debtor's neglect; and finally that there was not any reasonable hope of financial rehabilitation of the debtor. During the hearings, the bank filed its amended petition, in which was set up the nature and extent of the services of counsel for the bank in connection with the chattel mortgage and its claim thereunder, and a statement of costs and expenses incurred and paid by it. Testimony was received and considered by the Commissioner upon the value of the sheep, and items of credit and debit in connection with fixing the amount due upon the mortgage.

On April 29, 1942, the Commissioner made his order granting the petition, in which he fixed $11,808.87 as the amount due upon the mortgage, and ordered the sale of the sheep and other property at public auction before him on May 9, 1942, at their place of location, subject to specified minimum prices and his confirmation.

On May 8, 1942, pursuant to the debtor's petition, this court issued an order temporarily restraining such sale and requiring the bank to appear and show cause why this restraint should not be continued until further order. In the meantime, and on May 5, 1942, debtor filed his amended petition and was adjudicated a bankrupt, pursuant to the provisions of Section 75, sub. s. Further proceedings in that connection were referred to Commissioner Gabbert. Debtor alleged in this amended petition that he was aggrieved by the composition and extension, and that he desired to obtain the benefits conferred by such subdivision s. In the meantime—the exact date of which does not appear in the record before the court—debtor filed with the Commissioner his petition for a review by the judge of said order made by the Commissioner on April 29, 1942. On May 14, 1942, the Commissioner filed with the clerk of this court his certificate on review.

On May 26, 1942, the bank filed with the clerk of the court its notice of motion "to dismiss petition under section 75-(s)". The principal grounds of the motion are that (a) the order of foreclosure of March 23, 1942, became a final order by reason of lapse of time with no appeal taken therefrom; (b) the debtor is not entitled to invoke the provisions of subdivision s because of his failure to comply with the terms of his confirmed composition and extension proposal and that he was not aggrieved by the same; (c) during the time intervening, the estate has been depreciating in value, that he has not filed any accounting with the court, and that expenses of administration have accrued which cannot be paid owing to lack of funds; (d) there is no reasonable probability of financial rehabilitation of the debtor; (e) the amended petition under sub. s was not filed in good faith; (f) Section 75, sub. s, provides that liens, such as that of the bank under its chattel mort-

gage, shall be protected; and (g) it is necessary for the bank, as a lien holder, to proceed with the foreclosure of its chattel mortgage in order to protect it against loss.

The petition to review, the restraining order, and the motion to dismiss, are now before the court for consideration and determination. They are all so tied together that they will be considered as a whole.

■ The minute order of the court, entered on March 23, 1942, was, in effect, a decree of foreclosure of the chattel mortgage. It was final in its terms and has now become a final judgment, unassailable, by reason of lapse of time, either by a motion for a new trial under the Federal Rules of Civil Procedure (Federal Rules of Civil Procedure, rule 59, 28 U.S.C.A. following section 723c; General Order in Bankruptcy No. 37), or by an appeal under the Bankruptcy Act (Bankr.Act, Sec. 25; Mutual Bldg. & Loan Ass'n v. King, 9 Cir., 83 F.2d 798, 31 A.B.R.,N.S., 378). A decree is none the less final because some future orders of the court may become necessary to carry it into effect. If the judgment disposes of the merits of the particular matter before the court and terminates the controverted issues, the fact that further proceedings remain to be taken in court to make it effective does not interfere with its finality. Guaranty Trust & Savings Bank v. City of Los Angeles, 186 Cal. 110, 199 P. 35; Bronson v. La Crosse & M. Railroad Co., 67 U.S. 524, 2 Black 524, 531, 17 L.Ed. 347. The order is not void upon its face, the court had jurisdiction of the parties and of the subject matter, and the only way it can now be attacked is by a motion to vacate. A bankruptcy court has continuous power to vacate or modify its own orders, if no intervening or vested rights are disturbed. Federal Land Bank v. Hansen, 2 Cir., 113 F.2d 82, 43 A.B.R.,N.S., 76; Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557, 33 A. B.R.,N.S., 1; In re Price, 7 Cir., 99 F.2d 691, 38 A.B.R.,N.S., 261. No application to vacate has been made; and there is nothing in the record to justify the granting of such an application.

■■ The debtor contends that the order was void since the foreclosure was automatically stayed by the provisions of Section 75, sub. o, of the Bankruptcy Act (Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370) and the order, in effect, vacated the stay without a previous hearing and report by the conciliation commissioner as required by Section 75, sub. o. However, this "hearing and report" refers to the hearing before the conciliation commissioner on the debtor's composition and extension proposal, and the Commissioner's report thereof. It does not refer to a hearing and report by the Commissioner on a petition for leave to sell. Where, as here, a creditors' meeting has been held at which the debtor has submitted his plan of composition and extension, and the Conciliation Commissioner has filed the plan with the court together with a report that the plan has been accepted by the required number of creditors, and the plan has been confirmed by the court and has been in operation for some time, the court has ample power to permit a secured creditor to sell the debtor's property under a chattel mortgage. McFarland v. West Coast Life Ins. Co., 9 Cir., 112 F.2d 567, 43 A.B.R.,N.S., 218.

■ The adjudication of the debtor as a bankrupt under subdivision s of Section 75 came after the time for appeal from the order of foreclosure of March 23rd had elapsed. What effect did this adjudication have upon that order? A debtor's proceedings under sub. s are but a continuation of proceedings under the other provisions of Section 75, subs. a–r; and, if the original petition, as here, was sufficient to show the jurisdiction of the court (particularly that the debtor was a farmer within the meaning of the act), such jurisdiction continues. Leonard v. Bennett, 9 Cir., 116 F.2d 128, 44 A.B.R.,N.S., 745; In re Brown, D.C. S.D.Iowa, 21 F.Supp. 935, 36 A.B.R.,N.S., 828. In the case of Potter v. Union Central Life Ins. Co., 6 Cir., 111 F.2d 145, 42 A.B.R.,N.S., 880, it was held that the statutory stay of foreclosure proceedings pending against a debtor's property, provided for in Section 75, sub. o, should not be vacated upon a motion filed by the mortgagee prior to the debtor's adjudication under sub. s, and before the debtor has had any reasonable opportunity to demonstrate the possibility of his rehabilitation within three years under sub. s. However, in the case at bar the stay was vacated by the order of March 23rd, and, since no motion for a new trial was made, and no appeal taken within the time required, or at all, such order became final, binding and impregnable to subsequent attack, no matter how erroneous that order may have been. Bernards v. Johnson, 314 U.S. 19, 62 S.Ct. 30, 86 L.Ed. 11, 47 A.B.R.,N.S., 130.

724

Furthermore, the debtor here has had ample opportunity to demonstrate the possibility of his financial rehabilitation. This he has signally failed to do. The record shows that, during the more than three years elapsing between the time the proceeding was commenced until the adjudication under sub. s, the debtor's financial condition, instead of improving, has steadily been growing worse, and the value of the bank's security under the chattel mortgage has been steadily depreciating.

The Commissioner, by the order of March 23rd, was given the power to determine the manner in which the foreclosure was to be consummated. He selected the bankruptcy court, through himself, as the forum. A Conciliation Commissioner has equivalent powers and duties to those of a referee in bankruptcy. Like a referee, he is a part of the bankruptcy court. Federal Land Bank v. Castanien, 6 Cir., 116 F. 2d 589, 45 A.B.R.,N.S., 176. The bankruptcy court, in its exclusive control over the administration of the debtor's or bankrupt's estate, has full power to determine the method of foreclosure of liens upon property of the debtor, or bankrupt, where, as here, such property is in the actual or constructive possession of the court. Eldredge Brewing Co. v. Portsmouth, 1 Cir., 118 F.2d 410, 45 A.B.R.,N.S., 598. While ordinarily the bankruptcy court will permit outside foreclosure where it appears there is no equity in the property, it is within the discretion of that court not to do so and to handle the foreclosure itself in spite of an apparent lack of a probable surplus for the bankrupt estate. In re American Fidelity Corp., D.C.S.D.Cal., 28 F.Supp. 462, 40 A.B.R.,N.S., 379; In re Hout, D.C. W.D.Pa., 9 F.Supp. 419, 26 A.B.R.,N.S., 360; In re Miller, 2 Cir., 95 F.2d 441, 36 A.B.R.,N.S., 361. The rule that valid liens shall not be disturbed by bankruptcy proceedings has reference entirely to the validity and obligations of the contract and not to the remedies for enforcing the lien holder's rights, which can be changed without impairing the obligations of the contract so long as an equally adequate remedy is afforded. Allebach v. Thomas, 4 Cir., 16 F.2d 853, 9 A.B.R.,N.S., 132; In re Jersey Island Packing Co., 9 Cir., 138 F. 625, 2 L.R.A.,N.S., 560, 14 A.B.R. 689. Sales in the bankruptcy court are usually preferable to sales elsewhere because an impartial court can control the sales price to the end that the highest price obtainable can be secured through continuances of the sale until that goal is reached. Allebach v. Thomas, supra.

Section 75, sub. s (4) provides that if, at the time the farmer-debtor amends his petition asking to be adjudged a bankrupt, a receiver is in charge of any of his property, the receiver shall be divested of possession and the property returned to the possession of the farmer. In proceedings under that section, the bankruptcy court has the power to appoint a receiver of the debtor's property, but this provision of subdivision s (4) refers only to equity receivers or those of a similar character, and not to receivers in bankruptcy. In re Armold, 7 Cir., 83 F.2d 530, 31 A. B.R.,N.S., 354. Furthermore, in our case, the bankruptcy court has not lost control over the property in question. It is still in the actual possession of that court by and through the mortgagee. The mortgagee was given possession by the Commissioner simply as a conservation measure. The possession of the mortgagee is analogous to that of a receiver in bankruptcy. Strictly speaking, it would seem that this language of subdivision s (4) is not sufficiently broad to include a mortgagee in possession. While Section 75 is to be liberally construed to accord the debtor the full measure of the relief afforded by Congress (Cohan v. Elder, 9 Cir., 118 F.2d 850, 45 A.B.R.,N.S., 666; Wright v. Union Central Life Ins. Co., 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184, 186, 44 A.B.R.,N.S., 280; Kalb v. Feuerstein, supra; John Hancock Mut. Life Ins. Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176, 41 A.B.R. 296), we must not lose sight of the principle that it is the duty of the court in administering an estate under Section 75, not only to look to the interests of the debtor, but also to the interests of the creditors to the end that all rights may be preserved and protected. Paradise Land & Livestock Co. v Federal Land Bank, 10 Cir., 108 F.2d 832, 42 A.B.R.,N.S., 117. Interpretations of statutes must be reasonable and fair, with a view to effect their objects and to promote justice. Estate of Parrott, 199 Cal. 107, 113, 248 P. 248. In bankruptcy, a stay of reasonable duration, and the risk naturally accompanying it, may be accepted as an incident of the proceeding, but creditors must not be subjected to irreparable injury by unreasonable suspension of their remedies. United States Nat'l Bank v. Pamp, 8 Cir., 83 F.2d 493, 31 A.B.R.,N.S., 38; Continental Illinois Bank v. Chicago R. I. & Pac. Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79

L.Ed. 1110, 27 A.B.R.,N.S., 715. Here the bank has been stayed for a period of more than three years, during practically all of which time debtor has neglected the estate and ignored his obligation. It appears from the record before the court that any further stay may, and it is reasonable to assume that it would, result in irreparable injury to the bank as a secured creditor.

While subdivision s of Section 75 provides a course of procedure designed to give the farmer-debtor a three year moratorium during which he may endeavor to effect financial rehabilitation (John Hancock Mut. Life Ins. Co. v. Bartels, 308 U. S. 180, 60 S.Ct. 221, 84 L.Ed. 176, 41 A.B.R., N.S., 296; Wright v. Union Central Life Ins. Co., 311 U.S. 273, 61 S.Ct. 196, 85 L. Ed. 184), still there is a significant provision in clause (2) of sub. s which deserves consideration here. It is there specified that, after certain steps have been taken, the court, in its discretion—if it deems such action necessary to protect the creditors from loss or to conserve the security—may order the sale of any unexempt perishable property of the debtor. The word "perishable", as used in the Bankruptcy Act, means not only property which is perishable in a physical sense, but, also, property which may depreciate in value by reason of delay in its disposition. Hill v. Douglass, 9 Cir., 78 F.2d 851. Here the record definitely shows that the sheep are "perishable" in both senses, and that the other personal property covered by the chattel mortgage, viz., a few items of equipment used in connection with the care of the sheep, is, at least, depreciating in value. It seems inequitable that the sale of this property should be further delayed in order that the steps specified under sub. s (2) may be taken prior thereto. By that time the perishability may well be greater; thus causing further loss to the secured creditor with no offsetting advantage or benefit to the debtor.

We are not concerned here with the problems that were before the Supreme Court for solution in the cases of Borchard v. California Bank, 310 U.S. 311, 60 S.Ct. 957, 84 L.Ed. 1222, 42 A.B.R.,N.S., 596, and Wright v. Union Central Life Ins. Co., supra. In those cases it was held error for the lower court, after an adjudication under sub. s, to vacate the stay and permit the secured creditor to foreclose until certain steps were taken under sub. s for the benefit and protection of the debtor. Here we are dealing with the effect of an adjudication under sub. s, after a vacation of the stay and a decree of foreclosure by the bankruptcy court which became final and conclusive before the debtor's amended petition was filed for adjudication under sub. s.

Counsel for the debtor complains that the debtor's amended petition for adjudication under 75, sub. s, was filed with the Conciliation Commissioner some days before May 5, 1942, and that the Commissioner neglected to forward the same promptly to the Clerk of this court. Be that as it may, it was the duty of counsel to file the amended petition with the Clerk and not with the Commissioner, and any blame for the delay is chargeable to counsel and not to the Commissioner.

What we have said above covers a number of the points raised by debtor in his petition to review the Commissioner's order of April 29, 1942, which fixed the forum and the method of sale. This petition for review is defective in that the specifications of error are set forth in general terms and do not show the reasons why it is contended that alleged errors have been made. In re Florsheim, D.C.S.D.Cal., 24 F.Supp. 991, 38 A.B.R.,N.S., 142.

It is not the duty of a reviewing court to search the record to find error. Counsel for the debtor was notified by the Clerk of this court by mail, in a letter dated May 21, 1942, of a minute order of the court made that day requiring such counsel to specify by amendment the reasons, in detail, for the assignments of error set out in the petition for review. No amended or supplementary petition has been filed. These assignments attack the Commissioner's findings that the sheep are of the value of $10,500, that certain charges for expenses should be added to the debt secured by the chattel mortgage, and that the amount of such debt, as of April 29, 1942, is $11,808.87. The Commissioner, in his certificate, gives reasons in support of these findings and counsel for the debtor, in a brief filed with the court, assigns reasons why such findings are erroneous. In the consideration of these findings, we must bear in mind that, as a reviewing court, we are bound to accept the findings of the Commissioner unless they are clearly erroneous, and due regard must be given to the opportunity of the Commissioner to judge of the credibility of the witnesses. Federal Rules of Civil Procedure, rule 52(a); General Order in Bankruptcy No. 37. Also we have before us, so far as evidence is concerned, only the record of the case on file with the Clerk of the court, and the

summary of the evidence set forth in the Commissioner's certificate on review. We do not have the benefit of any transcript of the evidence taken before the Commissioner. Under such conditions, we are limited in our consideration of the matter to the record and the Commissioner's certificate. Cooper v. Dasher, 290 U.S. 106, 54 S.Ct. 6, 78 L.Ed. 203, 23 A.B.R.,N.S., 667; In re Trottier, D.C.Mass., 32 F.2d 1010, 14 A.B.R.,N.S., 191; In re Day Lumber Co., D.C.Wash., 8 F.2d 146, 6 A.B.R., N.S., 623.

Counsel for the debtor contends that the finding of the Commissioner that the value of the sheep was $10,500 is based in part upon improper considerations. The debtor fixed such valuation at $18,711.84. Other witnesses fixed the value at $8,500, $11,406.50, $11,024, and $10,604, respectively. However, the Commissioner, in his certificate refers to an appraisement of $8,700 made by a bankruptcy court appraiser, and two other appraisals of $8,400 and $8,500 made by competent sheep men—none of whom testified at the hearing. The Commissioner states in the certificate: "In view of the conflict among the prices, the undersigned took the approximate figures of the appraisers with the longest experience, greatest reputation and those who most impressed the Commissioner with their honesty and integrity," and he set a minimum sales price at $10,500. In the case of Moser v. Mortgage Guaranty Co., 9 Cir., 123 F.2d 423, 47 A.B.R.,N.S., 574, it appeared that the debtor in a proceeding under Sec. 75, sub. s, requested a reappraisal of his property as provided in subdivision (3) of that section, that the Conciliation Commissioner, after holding a hearing on the question of valuation, personally visited the property, talked to other property owners in the vicinity, and used the information thus obtained in fixing his valuation. It was there held that this procedure was a material and prejudicial departure from the statute; that the act does not recognize the Commissioner as a qualified appraiser nor authorize him to act in that capacity; and that it does not authorize him to supplement the "evidence submitted" with investigations and evidence taken by him outside the hearing and without the knowledge of the parties. Here we have a somewhat similar situation. However, the fixing of a valuation in our case, in advance of the sale, was not essential. Its purpose was to establish minimum sales prices for the protection of both the debtor and the bank. This matter of valuation can be considered again by the Commissioner when any actual sale of the sheep comes before him for confirmation or rejection. The debtor or the bank, or both, may, at that time, request a hearing before the commissioner on this question of valuation. His probable error in that respect need not be corrected now by requiring a new hearing at this time; thus delaying the sale.

Most of the other assignments of error relate to the allowance of charges for expenses against the mortgage debt. While the details given in the record of the reasonableness and propriety of these charges are not altogether satisfactory, still the presumption is that the Commissioner's findings are correct. In re Byrd Coal Co., 2 Cir., 83 F.2d 190, 31 A.B.R., N.S., 241. The finding as to the reasonableness and propriety of the allowance of a fee of $1,500 to counsel for the bank would be open to question if the record clearly disclosed that some of the services included matters having little if anything to do with the matters for which counsel fees can be allowed under the terms of the mortgage and the note secured thereby. However, there is nothing in the record which clearly overcomes the presumption. It is true that in the bank's amendment to its petition for leave to sell personal property under the chattel mortgage, filed with the Commissioner, a detail is given, to a limited degree, of the nature and extent of counsel's services, but this detail is not sufficient on its face for the court to say that the Commissioner abused his discretion in fixing the amount of the fees or that the services could not be considered as a proper charge against the mortgage debt. While the amount to be allowed as attorneys' fees must be reasonable, it is within the judicial discretion of the court making the allowance and its order in that respect will not be reversed or modified by a reviewing court unless there has been an abuse of discretion. In re Owl Drug Co., D.C.Nev., 16 F.Supp. 139, 31 A.B.R.,N.S., 763; Unger v. Noxon Chemical Products Co., 3 Cir., 82 F.2d 312, 31 A.B.R.,N.S., 145. The debtor complains that the Commissioner has allowed interest on the mortgage debt at 6% instead of 5%. The old notes for which payment the chattel mortgage was originally given as security did provide for a 5% rate, but such notes, under the new deal effected when Wood

came into the picture, were replaced by the note for $7,750 given by Wood which provides for 6%. This objection of the debtor is without merit.

During the course of the bankruptcy case, surcharge proceedings by the debtor against E. Kenneth Wood occupied a great deal of the time of the court, the Commissioner, and the Commissioner acting as a special master, and many papers were filed in connection therewith. A surcharge was allowed by the court, but the exact amount has not yet been definitely fixed. There appears to be some question as to whether or not the exact amount should be $2,974.73 or $1,974.73. The debtor contends that the amount of the surcharge, as finally fixed, should be credited against the mortgage debt. But there is no connection between the two, and such contention is without merit.

Finally the debtor contends that the amount of $11,808.87 as fixed by the Commissioner to be due upon the mortgage debt is erroneous. The Commissioner, in his order under review, gives the items resulting in this total, and there does not appear to be any error in that respect. In the light of the court's views of the law, as above expressed, this contention is without merit.

 We still have for consideration the petition of the bank for the dismissal of the proceedings by the debtor under subdivision s of section 75. In view of recent rulings by higher courts, we feel that this petition cannot be granted. In the late case of John Hancock Mut. Life Ins. Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176, 41 A.B.R.,N.S., 296, (where the prior case of Wright v. Vinton Branch of Mountain Trust Bank, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455, 33 A.B.R.,N.S., 353, appears to have been overruled to some extent), it was held that the fact that there was no reasonable probability of the debtor's financial rehabilitation does not show bad faith on his part, or authorize the court, in disregard of the procedure specified in section 75, sub. s, to dismiss the amended petition for an adjudication under that subdivision. A farmer-debtor who feels aggrieved by a composition or extension may seek relief under sub. s even after his proposal has been confirmed, for Congress apparently anticipated that a consiliation plan might prove unworkable after a trial. The procedure provided in subdivision (1) of

section 75 for modification of a proposal which has been confirmed by the court is not exclusive; the debtor may resort to either course, or pursue both in sequence. Where a farmer-debtor seeks relief under section 75, sub. s, after the confirmation of his composition or extension proposal under the other subdivisions of the section, there is nothing in the act which requires that his amended petition under sub. s must be filed within a reasonable time after such confirmation. Cohan v. Elder, supra.

The temporary restraining order staying the sale should be dissolved. The petition of the debtor to review the order of the Conciliation Commissioner of April 29, 1942, relative to the fixing of the mortgage indebtedness and the method of sale should be denied and the order affirmed, with this modification: That either the debtor or the bank may bring before the Commissioner the question of the value of the sheep and have a hearing thereon prior to the confirmation or rejection by him of any sale. The petition of the bank for a dismissal of the amended petition of the debtor for an adjudication under section 75, sub. s, which would, of course, involve a vacation of the adjudication following the filing of that petition, should be denied.

Counsel for the parties will prepare the proper formal orders for the court to sign and file, pursuant to Rule No. 8 of this court.